**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

|  |  |
|---|---|
| GOTV NETWORKS LLC,<br><br>            Plaintiff,<br><br>    v.<br><br>THE HOME DEPOT, INC.<br><br>            Defendant. | Case No.<br>**Jury Trial Demanded** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff GoTV Networks LLC ("GoTV Networks") files this Complaint against Defendant The Home Depot, Inc. ("Home Depot") for infringement of United States Patent Nos. 8,009,619; 9,766,080; 10,254,378; and 11,317,238 (the "Patents-in-Suit"), and alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

2.      GoTV Networks seeks monetary damages.

### THE PARTIES

3.      GoTV Networks is a limited liability company organized under the laws of the State of Delaware, with a place of business at 300 Delaware Avenue, Suite 210, Wilmington, Delaware 19801.

4.      Home Depot is a corporation organized under the laws of the State of Delaware and has a principal place of business at 2455 Paces Ferry Road, Atlanta, Georgia 30339.

5.      Home Depot may be served through its registered agent for service, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

6.      Home Depot conducts business nationally, including within this district.

7.      On information and belief, Home Depot makes, uses, sells, offers for sale, imports, or otherwise provides, directly or indirectly, products and services that infringe the Patents-in-Suit, including in the State of Texas and the Eastern District of Texas.

8.      On information and belief, Home Depot's customers use and access Home Depot's infringing products and services, including in the State of Texas and the Eastern District of Texas.

9.      On information and belief, Home Depot induces its customers' use and access of Home Depot's infringing products and services, including in the State of Texas and the Eastern District of Texas.

10.     Over the past decade, Home Depot has undergone a profound digital transformation to remain competitive in a mobile-first retail landscape. Its customers include professional contractors, DIY enthusiasts, and casual shoppers. These customers demand instant access to product details, pricing, availability, and customer support from any location. This includes while they are physically inside its cavernous stores. This shift has been driven by the recognition that modern consumers use their handheld devices, such as iPhones and Android smartphones, not just to browse from home. They also use them to make real-time decisions in aisles, loading zones, and parking lots.

11.     To meet these expectations, Home Depot has built a sophisticated digital ecosystem. This ecosystem integrates its vast inventory systems, customer service platforms, and e-commerce infrastructure into a unified real-time experience. This experience is accessible

through multiple mobile touchpoints. The infringing Home Depot Mobile Application, for instance, allows users to scan barcodes for instant stock checks. It lets them locate items within a specific aisle. It enables them to track order status. It helps them manage Pro Xtra loyalty rewards. All of these are updated live as conditions change. Additionally, the infringing Live Chat System is embedded in both the Home Depot Mobile Application and the Mobile Website (homedepot.com). It connects customers immediately with support agents for product questions, order assistance, or troubleshooting. Typing indicators and message delivery confirmation appear in real time within the Live Chat System.

12. At the heart of this ecosystem lies a network of backend servers. These servers serve as the central control system for all real-time communications between customer devices and Home Depot's core business platforms. These servers receive incoming connection requests from client software components running within the Home Depot Mobile Application, the Live Chat System, and the Mobile Website. They then dynamically manage the communication protocols to ensure uninterrupted service.

## JURISDICTION AND VENUE

13. GoTV Networks repeats and re-alleges the allegations in the Paragraphs above as those fully set forth in their entirety.

14. This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 283-285, among others. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

15. Home Depot operates over two thousand stores within the United States and its territories, including approximately 187 stores in the State of Texas, which further includes stores within this Judicial District.

3

16.     Home Depot provides mobile device applications through at least Google Play and Apple App Store that infringe the Patents-in-Suit.

17.     The Patents-in-Suit cover Home Depot mobile applications available through at least Google Play (https://play.google.com/store/apps/details?id=com.thehomedepot&utm_source=na_Med) and Apple App Store (https://apps.apple.com/us/app/the-home-depot/id342527639) (herein collectively with any other shopping application available by Home Depot, the "Home Depot Mobile Application"), which are developed and maintained by Home Depot for use by customers, including customers in locations within the State of Texas and the Eastern District of Texas.

18.     Home Depot, on its own and/or via its divisions, subsidiaries, partners, and affiliates maintains a corporate and commercial presence in the United States, including in the State of Texas and in this judicial district, via at least (1) physical locations established throughout Texas, including in this judicial district; (2) Home Depot's online presence (*e.g.*, https://www.homedepot.com/); and (3) the Home Depot Mobile Application that provides mobile device users access to Home Depot's communication, shopping and navigation products and services, including those features identified as infringing herein. Thus, Home Depot does business, including committing direct and indirect infringing acts, in the United States, in the State of Texas, and in this Judicial District.

19.     Home Depot has made, used, offered to sell and/or sold products and services, including the following specifically accused products and services: (1) the Home Depot Mobile Application;[1] (2) products and services associated with the Home Depot Mobile Application; (3)

---

[1] *See e.g.*, https://www.homedepot.com/c/mobile-app.

products and services associated with Home Depot's website;[2] (4) current or legacy products or services, which use, or have used, one or more of the foregoing products and services as a component product or component service; (5) combinations of products and/or services comprising, in whole or in part, two or more of the foregoing products and services; and, (6) all other current or legacy products and services imported, made, used, sold, or offered for sale by Home Depot that operate, or have operated in a substantially similar manner as the above-listed products and services. (As used herein, one or more of the foregoing products and services are individually and collectively referred to as the accused "Home Depot Products and Services"). On information and belief, the Home Depot Products and Services or their use infringe at least one claim of each of the patents-in-suit.

20.    Home Depot, as well as the hardware and software components comprising Home Depot Products and Services and/or that enable Home Depot Products and Services to operate, including but not limited to servers, server hardware, server software, website software, webservers, client-side software, mobile software, mobile app software, and browser executable software, software development kits (SDKs), and/or any of the foregoing which are supplied by Home Depot's technology vendors that act on its behalf, (each individually and collectively referred to herein as the accused "Home Depot System"), infringe (literally and/or under the doctrine of equivalents) at least one claim of each of the patents-in-suit.

21.    This Court has personal jurisdiction over Home Depot, at least, because it committed acts of infringement in this judicial district in violation of 35 U.S.C. §§ 271(a) and (b). In particular Home Depot has made, used, offered to sell access to, and/or sold access to the accused Home Depot Products and Services in the Eastern District of Texas; has made, used,

---

[2] *See e.g.*, https://www.homedepot.com; https://www.homedepot.com/c/customer-service.

offered to sell access to, and/or sold access to Home Depot System in the Eastern District of Texas; and has induced the use by its customers of Home Depot Products and Services and Home Depot System in the Eastern District of Texas.

22. Home Depot is subject to the Court's jurisdiction because it regularly conducts and solicits business, or otherwise engages in other persistent courses of conduct in this judicial district, and/or derives substantial revenue from the use, sale, and distribution of goods and services, including but not limited to with respect to the accused Home Depot Products and Services provided to individuals and businesses in the Eastern District of Texas.

23. Home Depot directly infringed the patents-in-suit in Texas including specifically the Eastern District of Texas through use, offers to sell access to, and/or sales of access to the accused Home Depot Products and Services in the Eastern District of Texas, and its making, use, offers to sell access to, and/or sales of access to Home Depot System in the Eastern District of Texas.

24. On information and belief, one or more of the accused Home Depot Products and Services and/or Home Depot System were made, used, sold and offered for sale by Home Depot, its subsidiaries and/or agents, in the Eastern District of Texas.

25. On information and belief, Home Depot's customers located in the Eastern District of Texas have obtained access to and used the accused Home Depot Products and Services and/or Home Depot System while located in the Eastern District of Texas.

26. The Court has personal jurisdiction over Home Depot, at least, because it has continuous business contacts in the State of Texas and in the Eastern District of Texas and Home Depot has engaged in business activities including transacting business in the Eastern District of Texas and purposefully directing its business activities, including the sale or offer for sale of

6

Home Depot Products and Services to the Eastern District of Texas to induce, aid, abet, and/or contribute to the infringement of third parties in the Eastern District of Texas, including without limitation the direct infringement of Home Depot's customers located in the Eastern District of Texas through the use of Home Depot Products and Services and Home Depot System, while they are located within the Eastern District of Texas.

27.    This Court has personal jurisdiction over Home Depot because, *inter alia*, Home Depot, on information and belief: (1) has committed acts of direct and indirect patent infringement in this Eastern District of Texas; (2) has substantial, continuous, and systematic contacts with this State and the Eastern District of Texas; (3) enjoys substantial income from its operations and sales in this State and the Eastern District of Texas; (4) employs Texas residents in this State and the Eastern District of Texas, and (5) solicits business using Home Depot Products and Services and Home Depot System in this State and the Eastern District of Texas.

28.    On information and belief, Home Depot supported and marketed Home Depot Products and Services and Home Depot System in the State of Texas and this Judicial District, to customers and potential customers, who reside in the State of Texas and in this judicial district through various means, including through the efforts of its agents and/or employees who reside in the Eastern District of Texas.

29.    Venue is proper pursuant to 28 U.S.C. §§ 1391(b), (c), (d) and/or 1400(b), at least because Home Depot committed acts of infringement in this judicial district, maintains regular and established places of business in this judicial district, and maintains employees within this judicial district. https://www.homedepot.com/l/TX.

## THE PATENTS-IN-SUIT

7

**United States Patent No. 8,009,619**

30.     On August 30, 2011, the USPTO duly and legally issued United States Patent No. 8,009,619 ("the '619 patent") entitled "Server-side wireless communications link support for mobile handheld devices" to inventors Philippe Clavel, and Bryan Waters.

31.     The '619 patent claims priority to U.S. Patent Application No. 11/977,319, filed on October 23, 2007. Accordingly, the '619 patent is entitled to a priority date of at least as early as October 23, 2007.

32.     The '619 patent is presumed valid under 35 U.S.C. § 282.

33.     GoTV Networks owns all rights, title, and interest in the '619 patent.

34.     GoTV Networks has not granted Defendant an approval, an authorization, or a license to the rights under the '619 patent.

35.     The '619 patent relates to, among other things, methods and systems for implementing wireless communications links for wireless mobile handheld devices.

36.     Mobile handheld devices vary widely in their hardware capabilities and supported network protocols. The '619 Patent explains that, depending on a device's sophistication, a developer "must either custom write communications routines… for more primitive devices, or merely hook into established APIs… for more advanced devices, or some combination of the two for devices that are in between." '619 Patent at 1:63-2:18. This approach demands significant coding and debugging effort for each device type, and developers "simply do not have the time or the resources to take even a single application through a customized QA and debugging process for all the different types of handheld devices that comprise the market." *Id*. In short, prior to the inventions of the '619 Patent, application developers faced a technical challenge in providing reliable wireless connectivity across numerous device types, network

technologies (*e.g.*, CDMA vs. GSM), and varying signal conditions without an excessive, device-specific development burden.

37. The '619 Patent identifies a need for a unified technical solution to this problem. It notes that "what is required is a standardized method for implementing wireless communications links for wireless mobile handheld devices" that can "adapt to the various different technologies used to implement a communications link between a handset and a server to provide a standardized way to communicate regardless of the carrier and regardless of the handset type." *Id*. at 2:18-29. It further calls for "a solution that is transparent to an application developer and presents a standardized, device-independent interface." *Id*. at 2:25-27. The patent then states that "the present invention provides a novel solution to these requirements," indicating that the invention fulfills this need with a new technical approach. *See Id.* at 2:18-29. These statements from the specification frame the invention as solving a specific technical problem in the field of wireless communications, namely, how to maintain an optimal communication link for any given device and network automatically, without requiring bespoke coding for each scenario.

38. By way of example, Claim 1 of the '619 Patent recites a specific server-side method that implements the above-discussed technical solution. In Claim 1, a server system is configured to establish and manage a wireless communication link with a mobile device through specific cooperating components. For example, the claimed method includes "receiving, at a server and via a communications network, a request for a communications link from a client communications component executing on a handheld device" and "establishing the communications link with the handheld device using a server communications interface executing on the server." *See e.g.*, '619 Patent at claims 1 and 9. In other words, the server's

9

communications interface software listens for a connection request from the device's client-side communications component and then initiates a wireless link to that device. This is a specifically claimed technical interaction between a client communications component on the handheld device and a server communications interface on the server, over a network, to set up a live communication channel.

39. Once the link is established, Claim 1 provides that the system automatically selects an optimized communication protocol tailored to the device and network type, while keeping the interface to the application consistent. *See also,* id. at claim 9. Specifically, at the initial connection, the server and device implement "a first protocol between the client communications component and the server based on a type of the communications link and a type of the handheld device." *See e.g., Id*. at claim 1. This first protocol is implemented "while maintaining a standardized application programming interface (API) for the server communications interface," and the link is established via the client's communications component "functioning with a device API component to configure hardware of the handheld device." *See e.g., Id*. at claims 1, 9. In effect, the claims require the system to detect the context and automatically use an appropriate communications protocol (such as a socket or HTTP-based protocol) optimized for that context. Importantly, this is done without changing the server's external API.

40. Claims 1 and 9 also address varying real-time network conditions by dynamically switching the communication protocol during operation. After the first protocol is in use, the claim requires "automatically implementing, at a second time after the first time, a second protocol, different from the first protocol, between the client communications component and the server based on a quality of the communications link at the second time." *Id*. In other words, if,

for example, the network link's quality changes (for example, the device moves to an area with poor signal or reduced bandwidth), the system will automatically change to a different protocol better suited for the new conditions.

41.     Moreover, the claims confine the protocol choices to a specific set of well-defined communication techniques, including "a socket full-duplex connection protocol, a socket half duplex connection protocol, an HTTP tunneling protocol, and an HTTP polling protocol" and requires that the first and second protocols be different types from this list. *Id.* By enumerating these protocol options, the claim ensures that the "automatic implementing" involves selecting among concrete networking methods (*e.g.*, switching from a full-duplex socket to an HTTP polling approach if the link degrades). This dynamic protocol switching is performed under the control of the server communications interface and the client component, without manual intervention, to maintain an optimal link as conditions change. Throughout this process, the standardized API to the server application is maintained, so the application itself remains unaffected by the change in protocol. *Id.*

42.     The claimed invention thus provides a specific technological improvement in the field of wireless communications. It creates a server-client framework that automatically optimizes how data is exchanged with mobile devices, based on, for example, device type and live link quality, all while exposing a uniform interface to application developers. The patent's disclosure underscores that maintaining speedy, reliable connections is critical for user experience (*Id*. at 1:38-44), and the claims achieve this by transparently managing protocol selection and switching at a low level. The claimed advance lies in this automatic, context-aware protocol management combined with a hardware-integrated design: the server's communications interface and the device's API/hardware layer work together to select the best available protocol

and seamlessly reconfigure the connection when network conditions change. Unlike a generic computer performing routine tasks, the claimed system is configured with specialized components operating in an unconventional manner to solve a concrete problem in network connectivity. *See e.g.,* id. at claims 1 and 9.

43.     In sum, all of the claims of the '619 Patent are directed to a particular technical solution – a novel server-side communications architecture that intelligently selects and switches communication protocols – and it recites significantly more than a mere idea of communication, embodying a practical improvement in computer networking functionality.

### United States Patent No. 9,766,080

44.     On September 19, 2017, the USPTO duly and legally issued United States Patent No. 9,766,080 ("the '080 patent") entitled "Systems and methods for indoor and outdoor mobile device navigation" to inventors C. Enrique Ortiz and Illya Busigin.

45.     The '080 patent claims priority to U.S. Provisional Patent Application No. 62/129,665, filed on March 6, 2015, pursuant to 35 U.S.C. § 119. Accordingly, the '080 patent is entitled to a priority date of at least as early as March 6, 2015.

46.     The '080 patent is presumed valid under 35 U.S.C. § 282.

47.     GoTV Networks owns all rights, title, and interest in the '080 patent.

48.     GoTV Networks has not granted Defendant an approval, an authorization, or a license to the rights under the '080 patent.

49.     The '080 patent relates to, among other things, systems and methods for location-based computer processing by a mobile device based on position data from multiple location providers.

50.     The claimed invention(s) of the '080 patent sought to solve problems with, and improve upon, location detection. For example, the '080 patent explains "[s]everal methodologies have been developed to determine the position of a mobile communications device. For example, the position of a device may be determined based on triangulation of nearby cell towers and based on properties of the connection the device has with each of these towers. However, such methods may yield inaccurate results under certain circumstances such as, for example, when there is insufficient cell tower density to provide precise resolution (*e.g.*, meter-level resolution) of the device's position." *See* '080 patent at 1:31-40.

51.     The '080 patent further explains that "Wi-Fi triangulation may also be utilized to determine the position of a mobile communications device. This approach is analogous to cell tower triangulation, but uses Wi-Fi hot spots near the device to determine its position. However, the applicability of this technique may be limited when, for example, the set of known Wi-Fi hot spots in a region is not sufficiently large, or when the user does not have access to the Wi-Fi network because the Wi-Fi radio is off, or when the user has not authenticated with the Wi-Fi network." *Id*. at 1:40-49.

52.     The '080 patent also explains that "[t]he Global Positioning System (GPS) may also be used to determine the position of a mobile communications device. GPS involves a constellation of satellites that broadcast data, allowing the device to determine its location using a triangulation calculation. However, GPS methodologies may have certain drawbacks. For example, GPS signals may not be sufficiently strong, or may have multipath issues, in certain locations. Furthermore, receiving and processing GPS position updates on an ongoing basis is typically battery intensive for mobile communications devices." *Id*. at 1:49-58.

53.     While "mobile devices may process position data from different types of location providers" at the time of the invention, each of these had significant draw backs. *Id*. at 1:31-60. The '080 patent recognized these drawbacks and "provide[d] methods and systems for performing location-based computer processing based on position data from multiple location providers." *Id.* at 1:64-66. The techniques for performing location-based computer processing claimed by the '080 patent were not routine or conventional at the time of their invention.

54.     The '080 patent addresses these deficiencies not by simply using a known positioning technique, but through a specific, multi-layered technical architecture that was unconventional at the time of invention. As a threshold matter, the patent recognized that different location providers — outdoor providers such as GPS, GLONASS, and cell tower triangulation, and indoor providers such as Bluetooth Low Energy, Wi-Fi, and NFC — each use different data models to express position information. *See e.g., id.* at 4:61-5:8. An outdoor GPS provider, for example, may express position as raw latitude and longitude coordinates with a particular accuracy radius, while an indoor BLE provider may express position relative to venue-specific identifiers such as a floor number or proximity to a particular beacon. *See id.* at 6:38–7:32. Prior to the inventions of the '080 patent, applications that needed to use position data from both types of providers had to manage these disparate, vendor-specific data models individually, which increased complexity and impeded seamless transitions between indoor and outdoor contexts. *See id.* at 3:7–17, 3:46–64.

55.     To solve this problem, the '080 patent discloses and Claim 13, for example, requires a specific technical process. First, position information is received from both an outdoor location provider and an indoor location provider that is *distinct* from the outdoor provider. *See e.g., id.* at claim 13. The claimed method then *normalizes* these disparate data streams — that is,

14

it converts the different vendor-specific data models into a provider-independent abstraction. *See e.g., id.* at 3:7–17; 6:24–7:32. The specification explains that this normalization layer generates a common data model that may include latitude, longitude, altitude, bearing, speed, time, floor number, horizontal accuracy, vertical accuracy, uncertainty radius, and location status, among other fields. *See id.* at 6:44–7:4. By abstracting position information from multiple heterogeneous sources into a single normalized representation, the system creates a unified framework that simplifies location-based processing for applications and enables seamless transitions between indoor and outdoor mapping. *See id.* at 3:39–64 (the normalized data model "may simplify location-based processing for applications" since "the position abstraction may be the same regardless of the underlying location provider").

56.     Using this normalized position information, Claim 13 then requires a *two-factor* determination that the device is transitioning between geographic regions. The first factor is determining, based on the normalized position information, that the mobile device is transitioning from a "first geographic region associated with first map data" to a "second geographic region associated with second map data." *See e.g., id.* at claim 13. The second factor is a separate determination that the mobile device has entered a "zone associated with the second geographic region based on the normalized position information and based on information related to a boundary of a Geo-fence that is associated with the second region." *Id.* The specification explains that this multi-factor approach — combining normalized position analysis with geo-fence boundary detection — provides "more accurate and efficient transitions between outdoor and indoor mapping" and "multi-factor validation" for transitions between regions. *See id.* at 3:39–47; 11:11–25. Only when both factors are satisfied does the system trigger the display of a map of the second geographic region on the device's user interface. *Id.* at claim 13.

57.     Furthermore, Claim 13 requires that both the first and second geographic regions are each associated with their own respective "map data" — the first region with "first map data" and the second region with "second map data." *Id.* at claim 13. This dual map-data architecture means the system maintains distinct mapping contexts for different geographic regions and intelligently switches between them based on the multi-factor transition determination described above. The specification underscores that "such transitions may occur automatically such that the user experience is seamless while moving inside and outside." *See id.* at 11:35–36. In this way, the claimed method does not merely detect a location; it orchestrates a coordinated technical response — normalizing heterogeneous position signals, performing multi-factor transition validation, and automatically switching the displayed mapping context — that provides a concrete improvement in how a mobile device handles the transition between outdoor and indoor environments.

58.     The ordered combination of these specific technical steps in Claim 13 — receiving position data from distinct indoor and outdoor providers, normalizing those disparate data streams into a provider-independent format, performing a dual-factor transition determination using both the normalized position and geo-fence boundary information, and conditionally displaying a region-specific map — was not well-understood, routine, or conventional at the time of the invention. No individual location provider, whether GPS, BLE, or Wi-Fi, performed this combination of functions. The specification itself describes how prior approaches yielded "inaccurate results" when relying on any single provider, and how the normalization and multi-factor validation architecture of the invention provides a more "accurate and precise determination of the device's position" by enabling "position information from disparate location providers" to be "more readily combined or compared." *See id.* at 1:31-60;

16

3:39-64. Claim 13 thus recites a specific, technically grounded improvement in mobile device navigation — not an abstract idea implemented on generic hardware.

59.     Consistent with the foregoing, on information and belief, the features and functionalities of the Home Depot Products and Services and Home Depot System that meet the limitations of the claims of the '080 patent, including at least claim 13, were first introduced after both March 6th, 2015, and the priority date of the of the '080 Patent. For example, on information and belief, prior to March 6th, 2015, and/or the priority date of the of the '080 Patent, Home Depot's Mobile App depended on a Home Depot Mobile App user manually providing a switch-activated indication in order to turn on an "In-Store Mode."

> The Home Depot is using location and context to reduce the friction between the user opening the app and finding their desired experiences. The app has two experience modes: the Default Mode, which is the standard app experience, and In-Store Mode, which is switch-activated by the user to indicate they are in the store. When in In-Store Mode, the app allows you to pick a specific store, set a preferred store, or discover the closest stores.

*See* https://uxmag.com/articles/designing-for-place-at-the-home-depot.

60.     Home Depot's prior reliance on a Home Depot Mobile App user manually providing a switch-activated indication in order to turn on an "In-Store Mode" demonstrates that the claims of the '080 patent, including at least claim 13, were directed to an unconventional technical solution.

### United States Patent No. 10,254,378

61.     On April 9, 2019, the USPTO duly and legally issued United States Patent No. 10,254,378 ("the '378 patent") entitled "Mobile Device Localization Based on Relative Received Signal Strength Indicators" to inventors Luan Dang, Matt Lindenberger, Devin Pigera, Duy Nguyen, Dennis Griesser, Kent Tu, Tyler Prevost.

62. The '378 patent claims priority to U.S. Provisional Patent Application No. 62/358,465, filed on July 5, 2016, pursuant to 35 U.S.C. § 119. Accordingly, the '378 patent is entitled to a priority date of at least July 5, 2016.

63. The '378 patent is presumed valid under 35 U.S.C. § 282.

64. GoTV Networks owns all rights, title, and interest in the '378 patent.

65. GoTV Networks has not granted Defendant an approval, an authorization, or a license to the rights under the '378 patent.

66. The '378 patent relates to, among other things, methods and systems for tracking a mobile device.

67. Exemplary Claim 1 of the '378 Patent is directed in part to a solution for accurately tracking a mobile device in a bounded area using specific computer-implemented techniques. The claimed method addresses technical problems rooted in mobile technology, including the difficulty of precise, real-time indoor localization, and solved such problems through detailed multi-step processes carried out by specialized hardware and algorithms.

68. For example, the '378 Patent explains that prior indoor localization techniques suffered from numerous technical shortcomings. In particular, "conventional localization technologies often f[e]ll short in user experience, cost, or security." '378 Patent, 1:13-29. For example, although GPS works outdoors, "it is energy consuming and may suffer from frequent satellite disconnections indoors." *Id*. Wi-Fi triangulation "[has] been unable to achieve accurate results with sub-second update times" (making it unreliable for moving mobile devices). *Id*. RFID "suffers from a relatively short communication range, a lack of extensibility, and may be world-readable" (creating security concerns). *Id*. Even device-centric dead-reckoning "may be prone to failure due to calibration issues and unwanted interference." *Id*. Consequently, earlier

RSSI-based indoor positioning methods were "unreliable for indoor sensor localization" due to "unacceptably high errors." *Id*. at 1:30-39.

69.     The '378 Patent confronts these technical problems with a novel, unconventional, and specific improvements in indoor positioning. For example, the patent expressly recognizes a "need for indoor mobile device localization technology with high-accuracy, sub-second updating, and resistance to interference," and states that the disclosed inventions address "at least some of these deficiencies" in prior approaches. *Id*. at 1:43-59. In particular, the patent describes improving indoor location accuracy by "integrating auxiliary information to more accurately determine a location of a mobile device" and by "taking into account various contextual information" from the device's sensors, such that "heuristic maps may be generated that provide increased information for users." *Id*. In other words, the invention leverages additional sensor data and intelligent mapping of possible positions to overcome the accuracy, latency, and interference technical issues that plagued conventional systems. *Id*.

70.     As an example, Claim 1 requires a detailed sequence of technical steps, rather than an abstract result. For example, the claimed method involves using sensor measurements from the mobile device to generate a "heuristic map" of possible current locations for the device in the defined area. *Id*. at claim 1. As the device moves, the system continuously updates this heuristic map to "disqualify a first possible current location from the set of possible current locations," thereby eliminating positions that become inconsistent with new sensor data. *Id*. As a further example, claim 1 further refines the device's estimated movement "based on a relative comparison of the received signal strength indicators." *Id*. All of these technically specified steps are performed by a computer system using data from the mobile device's sensors and radio receivers, implementing a concrete technical process rather than any manual or mental activity.

19

71.     The ordered combination of elements in exemplary Claim 1 — including the probabilistic heuristic map, the confidence-based disqualification mechanism, and the relative RSSI correction of dead-reckoning estimates described above — yields technological improvements that were not conventional or generic in the field.  Unlike prior art methods that relied on absolute signal readings and basic dead-reckoning, the claimed invention performs a "relative comparison of [RSSI] between nodes or between sets of sensor data… instead of absolute RSSI determinations." *See e.g.*, *Id*. at 2:17-23. In embodiments of the patented system, an initial movement estimate (*e.g.*, from accelerometer/gyroscope dead-reckoning) is subsequently "revised or corrected based on a… relative comparison of RSSI indicators," using radio signal data as a second source to improve accuracy. *Id*. at 2:33-41. Furthermore, the invention dynamically includes maintaining and updating a heuristic map of multiple possible locations, rather than a single guess. *See e.g.*, *Id*. at claim 1. The '378 Patent further explains that "[u]pdating the heuristic map may include disqualifying a first possible current location" that conflicts with the measured movement, and even qualifying new possible locations, as new sensor data arrives *Id*.  These updates occur with high frequency – "for example, every second or less" – and sensor readings are taken at least as often, "to provide a smooth user experience." *See e.g.*, *Id*. at 2:42-57. This specific combination of technical features (multi-sensor dead-reckoning, relative RSSI-based correction, and heuristic mapping of possible positions with frequent updates) was not well-understood, routine, or conventional in the industry, and it produces a markedly more robust and accurate indoor localization system.

72.     The claimed inventions thus include technical solutions to technological problems, achieved through specific technical means. It improves the functioning of computer-based location tracking systems by enabling accurate, real-time indoor device localization that

20

prior techniques did not and could not attain. The focus of the claims of the '378 Patent, including for example Claim 1, is not a mere abstract idea or general principle, but a concrete and innovative arrangement of hardware and software components (sensors, radio interfaces, mapping algorithms, etc.) that interact to solve a practical problem in indoor navigation. Accordingly, exemplary Claim 1 of the '378 Patent is drawn to a patent-eligible application of technology, providing a specific improvement in the field of mobile device localization as described in the patent's disclosure.

73.     On information and belief, the features and functionalities of the Home Depot Products and Services and Home Depot System that meet the limitations of the claims of the '378 patent, including at least claim 1, were first introduced after both July 5, 2016, and the priority date of the of the '378 Patent. For example, on information and belief, prior to July 5, 2016, and/or the priority date of the of the '378 Patent, Home Depot's Mobile App did not include store-wayfinding capabilities:

## How Home Depot is driving people back into its stores

By Digiday · August 15, 2018 · 🅵 𝕏 in ⬤

Over the past year, Home Depot has rolled out augmented reality and store-wayfinding capabilities within its mobile app. The retailer is adding in-store pickup for items

*See* https://digiday.com/marketing/home-depot-driving-people-back-stores/.

74.     On information and belief, Home Depot first introduced store-wayfinding capabilities to the Home Depot Products and Services and Home Depot System after both July 5, 2016, and the priority date of the of the '378 Patent.

21

75.     The absence of store-wayfinding capabilities in the Home Depot Mobile App in 2016, and later, demonstrates that the claims of the '378 patent, including at least claim 1, were directed to an unconventional technical solution.

**United States Patent No. 11,317,238**

76.     On April 26, 2022, the USPTO duly and legally issued United States Patent No. 11,317,238 ("the '238 patent") entitled "Monitoring Outdoor and Indoor Regions with Mobile Devices" to inventors Quan Feng, Jason Schmitt, Hua Luo, Narayan Iyer, Paresh Suthar, and Matthew Lindenberger.

77.     The '238 patent is a continuation of U.S. Patent Application No. 14/968,240, filed December 14, 2015, which claims priority to U.S. Provisional Patent Application No. 62/091,120, filed December 12, 2014, pursuant to 35 U.S.C. § 119(e). Accordingly, the '238 patent is entitled to a priority date at least as early as December 12, 2014.

78.     The '238 patent is presumed valid under 35 U.S.C. § 282.

79.     GoTV Networks owns all rights, title, and interest in the '238 patent.

80.     GoTV Networks has not granted Defendant an approval, an authorization, or a license to the rights under the '238 patent.

81.     The '238 patent relates to, among other things, methods and systems for the allocation of information regarding geographic area received on a mobile device.

82.     The claimed invention(s) of the '238 patent sought to solve problems with, and improve upon, the ability of a mobile device to determine its location and act accordingly.

83.     For example, the Claims of the '238 Patent address specific technical challenges in mobile device location tracking and provide concrete solutions rooted in computer technology. For example, the '238 patent explains that mobile operating systems impose limits on location

monitoring resources – for example, "the OS may limit the number of resources that are utilized to monitor location-based information. For example, the total outdoor regions and indoor regions that an application wants to monitor may outnumber the maximum number of regions that may be monitored by the OS." *See* '238 Patent, 1:54-63. The specification further notes that an application "may prefer to monitor different regions based on the position of the user." *Id*. In other words, conventional mobile devices could not simultaneously track all relevant regions due to OS constraints, creating a technical problem of efficiently managing limited location-monitoring capabilities. *Id*.

84.     The '238 Patent identifies and tackles these technical shortcomings in prior approaches.  It describes that relying on any single positioning method (such as GPS alone) can be impractical – "receiving and processing GPS position updates on an ongoing basis is typically battery intensive for mobile communications devices. Accordingly, mobile devices may process position data from different types of location providers" *Id*. at 1:24-50. Instead of using generic, routine techniques, the patented system unconventionally leverages multiple data sources and dynamic resource allocation to improve performance. The inventors recognized "it may be beneficial for an application operating on a mobile device to allocate the monitoring resources of a mobile device based on the location of a user (as assessed by the position of the user's mobile device)" *Id*. at 1:64-2:4. Therefore, by adaptively concentrating a device's location-tracking resources where they are needed most, the system can overcome OS limitations and reduce unnecessary battery drain. *Id*.

85.     Consistent with these goals, the '238 Patent's specification lays out detailed solutions that are implemented via specific technological steps. For example, in one embodiment, "an application on a mobile device is pre-loaded with outdoor regions and indoor

23

regions that the application wants to monitor in a large area of interest. Additionally, position information from multiple location providers is received at the mobile device for estimating the position of the mobile device" *Id.* at 4:41-61. Using this pre-loaded region data and incoming position signals (*e.g.* GPS, Wi-Fi, Bluetooth), the system can intelligently decide what to monitor. The patent describes that "[b]ased on the position information, a determination is made as to whether the mobile device is within an outdoor region that is pre-loaded to the application" *Id*. In essence, the software continuously evaluates the device's location relative to the defined geographic "regions" stored on the device. *Id*.

86.    The claimed inventions then dynamically allocate the mobile device's location-monitoring resources in one of two modes, depending on that determination. *See e.g.*, *Id.* at claim 1 at elements (c) and (d). If the device is not currently inside any of the predefined outdoor regions, the specification teaches that "the location monitoring resources of the mobile device are allocated in a first mode which preferentially monitors surrounding outdoor regions" *See e.g.*, *Id.* at 4:41-61, Claim 1. In this first mode, the device focuses its resources on tracking its geographic location with respect to nearby outdoor regions (for example, geofences in the vicinity), and it does not waste power on indoor-location sensors or far-away regions. *Id*. By contrast, "if a determination is made that the mobile device is within a given outdoor region… the location monitoring resources of the mobile device are allocated in a second mode which preferentially monitors the given outdoor region, and also preferentially monitors indoor regions within the given outdoor region." *Id*. In this second mode, the device's indoor location resource (*e.g.,* a Bluetooth or Wi-Fi based positioning module for inside a venue) is activated for the particular region the user entered, while monitoring of other, irrelevant outdoor regions is deprioritized. *See Id*. This targeted switching between modes provides a seamless transition as the user moves

24

between outdoor and indoor environments, ensuring the device always uses the most appropriate location technology for the context without extraneous monitoring.

87.     As an example, Claim 1 of the '238 Patent concretely implements this technical solution in the claimed device. It recites a non-transitory computer-readable medium storing code for a process that dynamically "allocat[es] the monitoring resources of the mobile device in a first mode to an outdoor location resource and to exclusion of an indoor location resource when it is determined that the mobile device is outside each of the plurality of outdoor regions" *Id*. at claim 1(c). Conversely, when the mobile device is detected to be inside a given outdoor region, the claimed process "allocat[es] the monitoring resources of the mobile device in a second mode to include the indoor location resource when it is determined that the mobile device is within a given outdoor region among the plurality of outdoor regions and to exclusion of other outdoor regions" *Id*. at claim 1(d). By also reciting that "each of the plurality of outdoor regions includes at least one… indoor region[]" and that in the first mode the device monitors its location relative to a "subset of the plurality of outdoor regions" (*Id*. at claim 1(a) and (c).), Claim 1 ties these resource-allocation rules to a specific spatial framework defined in the stored region data. In short, the claim requires a tailored sequence of technological steps triggered by the device's location status – receiving region information, determining the device's outside/inside status, and switching between dedicated outdoor-focused and indoor-inclusive monitoring modes accordingly. *See  Id*. at claim1.

88.     These claimed features are not generalized computer functions, but rather inventive arrangements that improve the functioning of the mobile device itself. The '238 Patent devotes its disclosure to the technical implementation and advantages of this approach, not to an abstract idea like organizing human activity. The problems solved (including for example,

managing a diversity of location sensors and conserving device resources) are technology-specific problems, and the solution (dynamic allocation of location tracking modes using pre-loaded region data and multi-source position inputs) are technology-driven solutions. The patent emphasizes that prior art techniques were inadequate – *e.g.* continuous GPS tracking was impractical due to power constraints, and mobile OS services could not handle monitoring all desired regions simultaneously. *See e.g. Id*. at 1:24-50 ("GPS methodologies may have certain drawbacks. For example, GPS signals may not be sufficiently strong in certain locations. Furthermore, receiving and processing GPS position updates on an ongoing basis is typically battery intensive for mobile communications devices."); Id. at 1:54-63. Exemplary Claim 1's combination of elements operates in a new way to address these issues. Notably, the claimed process improves the performance of the mobile device's location services by intelligently adjusting how and where the device expends its limited location-monitoring resources. *Id*. This yields more efficient operation (*e.g.* avoiding needless scans and reducing battery drain) and an enhanced user experience (seamless indoor-outdoor location awareness), all achieved through the specific technical features recited in, for example, Claim 1.

89.     Furthermore, the elements of Claim 1, both individually and as an ordered combination, were not well-understood, routine, or conventional at the time of the invention. The patent itself distinguishes the claimed approach from the prior state of the art. For example, mobile operating systems could monitor outdoor or indoor regions, but only in a limited way, and they did not provide the automatic mode-switching or region-prioritizing mechanism that the inventors devised *See Id.* at 2:43-3:10. By pre-loading a large set of region definitions into the device and then dynamically reallocating which subset of regions to actively monitor based on the device's real-time location, the invention achieves capabilities beyond the conventional

practice. *Id*. The '238 Patent shows that the inventors had to invent a new software-driven scheme to overcome OS limitations and to coordinate multiple location technologies in this manner. Accordingly, the specific combination of features recited in exemplary Claim 1 – including the dual-mode resource allocation and the conditional transitions tied to detected region entries/exits – is a specific technical improvement over prior techniques rather than a trivial use of generic computing components. These concrete, innovative features firmly ground the claims of the '238 Patent in a technological realm and support its eligibility under 35 U.S.C. § 101.

90.     On information and belief, the features and functionalities of the Home Depot Products and Services and Home Depot System that meet the limitations of the claims of the '238 patent, including at least claim 1, were first introduced after both December 12, 2014, and the priority date of the of the '238 Patent. For example, on information and belief, the version of Home Depot's Mobile App that introduced the infringing "Store Mode" feature was first released in or about November 2021.



*See* https://www.instagram.com/p/CXUXxoHLVbB/.









*See* https://www.youtube.com/watch?v=OP6PWaNAL-c

91.    In or about November 2021, the Home Depot employees in charge of developing and/or deploying the accused version(s) of the "Store Mode" feature found that work technically challenging because detecting users as they arrive at an indoor geofence was not conventional or routine.



*See* https://www.youtube.com/watch?v=OP6PWaNAL-c.

## CLAIMS FOR RELIEF

### Count I – Infringement of United States Patent No. 8,009,619

92.    GoTV Networks repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

93.    Home Depot has violated and continues to violate 35 U.S. C. § 271(a) with respect to one or more claims of the '619 patent, including for example Claim 9.

94.    Home Depot (or those acting on its behalf) (i) made, used, sold, imported and/or offered to sell the Home Depot Products and Services; and (ii) made, used, sold, sold access to,

imported, offered to sell and/or offered to sell access to and Home Depot System, and therefore have infringed, at least, claim 9 of the '619 patent.

95.     For example, when a customer opens the Home Depot Website on a mobile device or uses the Home Depot Mobile Application and initiates a chat session with Home Depot customer support, the Home Depot System receives a request for a communications link from a client communications component executing on the handheld device via a communications network. The Home Depot System then establishes a wireless communications link with the handheld device by using a server communications interface. This occurs when the Home Depot backend responds to a handshake request from the Mobile Application or Website to enable real-time updates.

96.     The Home Depot System then automatically selects a socket full-duplex connection protocol such as WebSocket. It does this when the quality of the wireless communications link from the mobile device is above or equal to a threshold. The Home Depot System selects one of a socket half duplex connection protocol, an HTTP tunneling protocol, and an HTTP polling protocol when the quality of the wireless communications link is below the threshold.

97.     Claim 9 of the '619 patent provides:

A server, comprising:

a processor; and
a memory coupled to the processor, the memory storing processor readable code that, when executed by the processor, is configured to cause the processor to:

receive, via a communications network, a request for a communications link from a client communications component executing on a handheld device;

establish a wireless communications link with the handheld device by using a server communications interface;

automatically select, as an optimized protocol, a socket full-duplex connection protocol if a quality of the wireless communications link is above or equal to a threshold, or one of a socket half duplex connection protocol, an HTTP tunneling protocol, and an HTTP polling protocol if the quality of the wireless communications link is below the threshold; and

automatically implement the optimized protocol between the client communications component and the server communications interface, the optimized protocol being implemented while maintaining a standardized application programming interface (API) for the server communications interface, the communications link being established via the client communications component functioning with a device API component to configure hardware of the handheld device.

98.    The Home Depot System comprises a system of backend enterprise servers, databases, and associated computer systems to implement and deploy services that process, handle, and enable communication, integration, and messaging APIs with mobile apps and clients on handheld devices (*e.g.*, the official Home Depot iOS and Android mobile app supporting real-time order tracking, live inventory checks, and customer support features). The collection of these backend computer systems, including processors, memory, and executable code, meets the server limitation claimed in at least Claim 9.

99.    The Home Depot System comprises at least one processor that executes software to enable communication, integration, and messaging APIs with mobile apps and clients, including for real-time features such as customer support chat, order status updates and inventory queries. This processor (or collection of processors in the server infrastructure) meets the processor limitation claimed in, at least, claim 9.

100.    The Home Depot System comprises a memory coupled to the processor, the memory storing processor readable code. The Home Depot System includes a memory that stores executable software code to enable communication, integration, and messaging APIs with

mobile apps and clients, supporting real-time data exchange for features like customer support chat, live order tracking and in-store inventory updates. This memory (or distributed memory in the server infrastructure) meets the memory limitation claimed in, at least, claim 9.

101.    The Home Depot System comprises the memory storing processor readable code that, when executed by the processor, is configured to cause the Home Depot System processor to receive a request for a communication link (*e.g.*, a request to initiate a customer support chat session to support a series of communications between the client and the server, as reproduced below) from a client communications component, such as the networking code in the Home Depot Mobile Application executing on a user's smartphone or tablet or the networking code delivered from Home Depot's website to a browser executing such code. This request is transmitted via a communications network such as the Internet (over cellular data or Wi-Fi). By way of example, the initial request to initiate a customer support chat session meets the request for a communications link limitation, as shown below:



*See e.g.,* screenshots from the Home Depot Mobile Application running on a user's smartphone show that the user clicks the live chat icon to send a request to Home Depot's backend servers to initiate a customer support chat session between the Home Depot's Mobile Application and Home Depot's backend servers.



34







*See e.g.,* screenshots from the Home Depot website running in browser show that the user sends a request to Home Depot's backend servers to initiate a customer support chat session between the Home Depot's website and Home Depot's backend servers.

102.    The Home Depot System comprises the memory storing processor readable code that, when executed by the processor, is configured to cause the Home Depot System's processor to establish a wireless communications link (*e.g.*, a persistent customer support chat session that enables a series of communications between the client and the server) with the handheld device that initiated the request, by using a server-side communications interface that handles incoming connections from mobile clients. The persistent chat session connection meets the claimed wireless communications link limitation. The Home Depot's System's server-side endpoint or interface handling the connection meets the server communications interface limitation.

36

103.    The Home Depot System comprises the memory storing processor readable code that, when executed by the processor, is configured to cause the Home Depot System processor to automatically select a socket full-duplex connection protocol (*e.g.*, WebSocket protocol) if the quality of the wireless link supports it (*e.g.*, successful handshake and stable connection), or a half-duplex or HTTP-based protocol (*e.g.*, HTTP polling, tunneling, or similar) if the link quality is insufficient. This adaptive selection is common in mobile app-server communications for real-time features (*e.g.*, live order tracking updates, real-time inventory status, or chat support), often implemented via native frameworks or open-source libraries that prioritize efficient protocols with automatic upgrades and fallbacks. The WebSocket protocol (or equivalent full-duplex socket) meets the claimed socket full-duplex connection protocol limitation. The HTTP polling, tunneling, protocols satisfy the claimed socket half duplex connection protocol, HTTP tunneling protocol, or HTTP polling protocol. The connection quality level at which the Home Depot System switches protocols satisfy as the claimed threshold. The Home Depot's System's performance of the protocol selection, as demonstrated in the screenshots below, without requiring user or manual intervention meets the automatic selection limitation.



*See e.g.,* screenshots from the Home Depot Mobile Application running on a user's smartphone.



*See e.g.,* screenshot of a network packet capture from the Home Depot Mobile Application during a live chat session between the user and Home Depot's backend servers, indicating that a WebSocket protocol is automatically selected for communication between the Home Depot's Mobile Application and the Home Depot's backend server. The WebSocket protocol is a full-duplex connection protocol.





*See e.g.,* screenshots of network packet capture from the Home Depot Website during a live chat session between the user and Home Depot's backend servers, indicating that a WebSocket protocol is automatically selected for communication between the Home Depot's website and the Home Depot's backend server. The WebSocket protocol is a full-duplex connection protocol.

104.    The Home Depot System comprises the memory storing processor readable code that, when executed by the processor, is configured to cause the Home Depot System processor to automatically implement and maintain the selected optimized protocol (*e.g.*, WebSocket full-duplex or HTTP polling/tunneling ) between the client communications component (in the Home Depot mobile app) and the Home Depot's System's server communications interface. As demonstrated below, this implementation occurs without requiring changes to higher-level application code, thereby maintaining a consistent interface for sending/receiving data (*e.g.*, for real-time features like chat, inventory updates, or order tracking).



*See e.g.,* screenshots from the Home Depot Mobile Application running on a user's smartphone.



*See e.g.,* a screenshot of a network packet capture from the Home Depot mobile application during a live chat session between the user and Home Depot's backend servers, indicating that a WebSocket protocol is automatically selected for communication between the Home Depot's Mobile Application and the Home Depot's backend server.





*See e.g.,* screenshots of network packet capture from the Home Depot Website during a live chat session between the user and Home Depot's backend servers, indicating that a WebSocket protocol is automatically selected for communication between the Home Depot's website and the Home Depot's backend server.

105.    The Home Depot's System's high-level messaging/data exchange API (*e.g.*, the abstracted real-time communication API used by Home Depot's backend services and mobile app for features requiring persistent or bidirectional data flow) meets the standardized application programming interface (API) for the server communications interface. The wireless network hardware (*e.g.*, Wi-Fi chipset or cellular modem/radio in the iPhone or Android device) meets the hardware of the handheld device limitation. The device-level networking framework or library (*e.g.*, Java Framework, Native Libraries, Connectivity Manager, HTTPURLConnection on Android, or Foundation Framework (URLSession)/CFNetwork, Network Framework support on iOS interfacing with the client's communication code) meets the device API component to configure hardware of the handheld device limitation. The automatic implementation of the selected protocol (without manual intervention or code changes at the application layer) while preserving the same higher-level API meets the requirement of implementing the optimized protocol while maintaining a standardized API.

106.    Home Depot directly infringed and continues to infringe at least claim 9 of the '619 patent in violation of 35 U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell the Home Depot Products and Services; and making, using, selling, selling access to, importing, offering for sale, and/or offering to sell access to the Home Depot System.

43

107.    GoTV Networks has been damaged by the direct infringement of Home Depot and has suffered and continues to suffer irreparable harm and damages as a result of this infringement.

108.    GoTV has been damaged by Home Depot's infringing conduct in an amount no less than a reasonable royalty.

### Count II – Infringement of United States Patent No. 9,766,080

109.    GoTV Networks repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

110.    Home Depot has violated and continues to violate 35 U.S. C. §§ 271(a) and (b) with respect to one or more claims of the '080 patent.

111.    Home Depot (or those acting on its behalf), including with respect to Home Depot's internal use for testing and development purposes, (i) made, used, sold, imported and/or offered to sell Home Depot Products and Services; (ii) made, used, sold, sold access to, imported, offered to sell and/or offered to sell access to Home Depot System; and, (iii) induced its customers to use Home Depot Products and Services and Home Depot System, in the United States, and therefore infringed (literally and/or under the doctrine of equivalents) at least claim 13 of '080 patent.

112.    The Home Depot Mobile Applications aim to provide "A GPS FOR YOUR SHOPPING LIST - Use the Product Locator to find what you're looking for and check store inventory. We'll take you to the exact aisle and bay."
https://play.google.com/store/apps/details?id=com.thehomedepot&utm_source=na_Med; *see also* https://apps.apple.com/us/app/the-home-depot/id342527639. Over 10 million people have downloaded the Home Depot Mobile Application through Google Play and over 2.7 million

people have reviewed the Home Depot Mobile Application in the Apple App Store. *Id*. The Store

Mode also enables local advertising:



113.    The Home Depot Mobile Application advertises the use of a "Store Mode" and

the ability to "Navigate your store fast with product locator", as shown in the below screenshot

from the Google Play application store:



*See e.g.,*

https://play.google.com/store/apps/details?id=com.thehomedepot&utm_source=na_Med; *see*

*also* https://apps.apple.com/us/app/the-home-depot/id342527639.

114.    Customers of Home Depot use the "Store Mode" to locate items in the store and claim this use increases their ability to efficiently shop at Home Depot.



**My Personal In-Store Assistant**

★ ★ ★ ★ ★                                        12/03/2023
                                                  As83as83as

Nothing replaces the helpful employees that work at Home Depot, but at times it can be difficult find to find one available due to how high demand they are. This app has made everything so easy. Coupled with the in store Wi-Fi, I'm able to get in and out of Home Depot in minutes with every item on my checklist crossed off. It allows me to search the store's inventory to see what's in stock and even will tell me the aisle and bay number of any item I'm looking for. Anyone reading this review, be sure to also check for sales in the app that are not in store. I've seen that prices may be cheaper on the app than in the store at times.As an app developer, I also have mad respect for the team that builds apps like these and maintains them. Insane how all the inventory locations for each store are spot on and up-to-date. User interface of the app is simple and to the point. Only complaint is the rental part of the app forced me to do one rental at a time. I rented a dolly and a trailer once and had to execute two different rental orders. Seemed almost like the rentals don't have a "cart" feature and are single item checkout only. Highly possible I did something wrong though. Honestly, a fairly moot point, and still rate 5 stars. Overall amazing app! Well done Home Depot app development and backend services team!

*See e.g.,* https://apps.apple.com/us/app/the-home-depot/id342527639?see-all=reviews.

115.    When a user logs into the Home Depot Mobile Application downloaded on an iPhone, there is an option for a "Store Mode" that can only be opened when in the immediate vicinity of a store. The left screenshot shows the Store Mode option before arriving in the vicinity of a store. The Store Mode automatically changes to the view in the right screenshot when in the vicinity of the store.



*See e.g.,* screenshots from the Home Depot Mobile Application.

116.    Once at a store and in Store Mode, new options are provided to the user, including a store map, local advertising, and bar code scanner, among others:



*See e.g.,* screenshots from the Home Depot Mobile Application.

117.    The Store Mode will notify the user that it requires both Bluetooth and Wi-Fi functions to be enabled, with the Wi-Fi automatically logged into a secure Wi-Fi network ("Guest-Passpoint") without prompting the user for permission or a password:







*See e.g.,* screenshots from the Home Depot Mobile Application.

118.    Once in Store Mode and having Wi-Fi and Bluetooth on, a map becomes

viewable, which can be further manipulated to provide more detailed information:





*See e.g.,* screenshots from the Home Depot Mobile Application.

119.    Upon searching for a particular product, the Store Mode identifies the location of

the product in the store, allowing the user to navigate to the precise location of a product:

51



*See e.g.,* screenshots from the Home Depot Mobile Application.

120. Once the user drives away from the store, Store Mode is again disabled until the user returns to a store:



*See e.g.,* screenshot from the Home Depot Mobile Application.

121.    Being out of Store Mode also means that the Home Depot Mobile Application no longer requires input from the Wi-Fi or Bluetooth to function, which preserves device battery life on at least an iPhone device.

122.    The Home Depot Mobile Application Store Mode is supported by Pointr:



*See e.g.,* https://www.pointr.tech/

One of the most effective ways of creating an omnichannel ecosystem for your customers is via an in-app **Store Mode**. Store Mode bridges the functionality of your mobile app with your physical in-store experience, presenting your retail business with a multitude of ways in which to drive additional revenue and enhance your customer experience.

But how can you get started with planning and implementing Store Mode? With so many options and avenues available, the choice can be overwhelming, which is why we've created the ultimate guide to Store Mode. In this guide you'll find:

● The value of Store Mode

● How retailers including Walmart, Home Depot and Target are already utilizing an in-app Store Mode

● How you can begin to implement Store Mode into your app

● What the future vision for Store Mode looks like

● How Pointr are uniquely positioned to make your Store Mode vision a reality

https://www.pointr.tech/store-mode-guide;

53



*Id.*

123.    On information and belief, the Home Depot Mobile Application Store Mode increases product sales.

> Unlike online shoppers, in-store shoppers can't view the rich information about products, such as photos, descriptions, and reviews. By giving in-store shoppers access to more information related to their purchase consideration, retailers are far more likely to make a sale: 20% of purchase failures are linked to a lack of available information.

*See* Exhibit 1 at 4, Pointr, The Store Mode Revolution, available at

https://www.pointr.tech/store-mode-guide.

124.    On information and belief, the Home Depot Mobile Application Store Mode increases the user's ability to navigate the large store with tens of thousands of products.

> ### In-store navigation
>
> Customers want to easily find products in stores. Big box stores like The Home Depot can easily span over 100,000 square feet, with thousands of products. The average customer rarely visits this expansive space more than four times a year[3]. Brands like The Home Depot and Michaels are using geolocation technology to guide shoppers through their stores and to the inventory they are looking for, reducing the frustration shoppers feel when they simply can't find what they are looking for among the dozens of aisles and tens of thousands of products on display.

> ## The Home Depot
>
> *4.4 ★ in Play Store, #21 Shopping Apps Ranking per App Annie*
>
> The Home Depot is one of the largest home improvement retail stores in the US, with nearly 2000 locations across the US and more than 10 million users. Their stated brand promise is to "provide the highest level of service, the broadest selection of products and the most competitive prices" for their customers who carry out more than 1.7 billion transactions every year.

*See* Exhibit 1 at 5, 8 ("Home Depot is one of the largest home improvement retail stores in the US, with nearly 2000 locations across the US and more than 10 million users…. [T]heir customers [] carry out more than 1.7 billion transactions every year.").

125.    The Home Depot Mobile Application directs a user to the exact aisle and bay of a product:



*See* Exhibit 1 at 9.

126.    The Home Depot Mobile Application uses "[a]n outdoor geofence [that] marks an area around a store and its parking lot. It is used by an app with location permissions to trigger events when a user enters or exits the geofenced area." *Id*. at 17.

127.    The Home Depot Mobile Application can also provide an indoor location system using at least Bluetooth and Wi-Fi because GPS may be unreliable inside of buildings. *Id.* at 18-19.

---

**Indoor Location System with Indoor Geofencing**

For any use cases that rely on knowing a user's location inside the store, you will need an indoor location system. Where GPS is unreliable inside of buildings, indoor location systems close that gap and make it possible to get a user's location inside of a store.

There are several indoor location systems available and the most reliable systems require some type of hardware to be available onsite. We highly recommend Bluetooth Low Energy (BLE) hardware for its balance of low cost, accuracy, and network security. BLE is available in the form of standalone beacons, inside of WiFi access points and smart lighting, and inside of many sensors and cameras as well.

---

you can embed into your mobile app. The SDK calculates the user's real time location inside of the store. The SDK should also give you the ability to create indoor geofences around departments, checkouts, dressing rooms, and other points of interest on your digital map.

Some indoor location providers also provide dynamic and static wayfinding algorithms which can be used to automatically calculate the fastest path between two locations inside a store.

We highly recommend using the same location provider for indoor location as your digital map. This is a critical integration point for a seamless customer experience, and a poor integration often leads to a poor customer experience.

Finally, the indoor location system should be able to feed location data back into your Customer Data Profile System.

---

*See* Exhibit 1 at 18,19.



*See e.g.,* https://www.youtube.com/watch?v=-5sGrZkkzjE;

128.    Claim 13 of the '080 patent provides:

A computer-implemented method for performing location-based computer processing by a mobile device, comprising:

receiving first position information from an outdoor location provider, wherein the first position information indicates a position of the mobile device;

receiving second position information from an indoor location provider, wherein the second position information indicates a position of the mobile device, and wherein the indoor location provider is distinct from the outdoor location provider;

obtaining normalized position information based at least in part on the first position information and second position information;

determining with a computer processor that the mobile device is transitioning from a first geographic region associated with first map data to a second geographic region associated with second map data based at least on the normalized position information;

determining that the mobile device has entered a zone associated with the second geographic region based on the normalized position information and based on information related to a boundary of a Geo-fence that is associated with the second region; and

based at least in part on the determination that the mobile device is transitioning from the first geographic region to the second geographic region, displaying a map of the second geographic region on a user interface of the mobile device.

129.   The Home Depot Mobile Application employs and provides a computer-implemented method for performing location-based computer processing by a mobile device available for download from app stores like Google Play and Apple App Store.

https://play.google.com/store/apps/details?id=com.thehomedepot&utm_source=na_Med;

https://apps.apple.com/us/app/the-home-depot/id342527639.





*See e.g.,* screenshots from the Home Depot Mobile Application.

130.    The Home Depot Mobile Application provides for receiving first position information (*e.g.*, GPS position information) from an outdoor location provider, wherein the first position information indicates a position of the mobile device:

One of the most effective ways of creating an omnichannel ecosystem for your customers is via an in-app **Store Mode**. Store Mode bridges the functionality of your mobile app with your physical in-store experience, presenting your retail business with a multitude of ways in which to drive additional revenue and enhance your customer experience.

But how can you get started with planning and implementing Store Mode? With so many options and avenues available, the choice can be overwhelming, which is why we've created the ultimate guide to Store Mode. In this guide you'll find:

- The value of Store Mode

- How retailers including Walmart, Home Depot and Target are already utilizing an in-app Store Mode

- How you can begin to implement Store Mode into your app

- What the future vision for Store Mode looks like

- How Pointr are uniquely positioned to make your Store Mode vision a reality

*Id.*

### What is Store Mode? ⊖

Store Mode refers to an app that, while focused on e-commerce functionality in general, offers users different functionality when they are physically located within one of the retailer's locations. For example, an app could usually allow users to buy products and check stock levels of a particular item. However, when the app user arrives in one of the stores, Store Mode is enabled, offering to navigate the user direct to the product they're looking for via a product locator tool, rewarding them for having installed the app with an exclusive voucher or coupon, or enable the user to alert staff for assistance from wherever they are in store.

### Which retailers are making use of an in-app Store Mode? ⊖

Many major retailers are already embracing the omnichannel possibilities offered by operated a dedicated Store Mode within their apps. These include Walmart, Target, Home Depot, and Macy's. To learn more about these specific use cases, download the guide by filling in the form above.

https://www.pointr.tech/store-mode-guide;

### a.  The technology components of Store Mode

Ex. 1 at 16;

**Outdoor Geofencing**

An outdoor geofence marks an area around a store and its parking lot. It is used by an app with location permissions to trigger events when a user enters or exits the geofenced area.

*Id.* at 17;

> **Indoor Location System with Indoor Geofencing**
>
> For any use cases that rely on knowing a user's location inside the store, you will need an indoor location system. Where GPS is unreliable inside of buildings, indoor location systems close that gap and make it possible to get a user's location inside of a store.
>
> There are several indoor location systems available and the most reliable systems require some type of hardware to be available onsite. We highly recommend Bluetooth Low Energy (BLE) hardware for its balance of low cost, accuracy, and network security. BLE is available in the form of standalone beacons, inside of WiFi access points and smart lighting, and inside of many sensors and cameras as well.

*Id.* at 18.



*See e.g.,* screenshots from Home Depot Mobile Application indicate that the application requires GPS location permission to locate nearby stores and to enable the in-store map. As shown in the screenshot on the left, the application prompts the user to enable location sharing (when GPS is

disabled). The screenshot on the right shows that the user may enable location sharing in response to this prompt.



*See e.g.,* screenshots from Home Depot Mobile Application indicate that, once location sharing is enabled, the application can use the GPS location information to search for nearby stores.

131.    The Home Depot Mobile Application provides for receiving second position information (*e.g.*, Wi-Fi or Bluetooth position information) from an indoor location provider, (*e.g.*, a Home Depot in-store Wi-Fi or Bluetooth system) wherein the second position information indicates a position of the mobile device, and wherein the indoor location provider is distinct from the outdoor location provider:

61





*See e.g.,* screenshots from Home Depot Mobile Application indicate that the app requires Wi-Fi

and Bluetooth position information to improve location accuracy.

## a.   The technology components of Store Mode

Ex. 1 at 16;

62

**Outdoor Geofencing**

An outdoor geofence marks an area around a store and its parking lot. It is used by an app with location permissions to trigger events when a user enters or exits the geofenced area.

*Id.* at 17;

**Indoor Location System with Indoor Geofencing**

For any use cases that rely on knowing a user's location inside the store, you will need an indoor location system. Where GPS is unreliable inside of buildings, indoor location systems close that gap and make it possible to get a user's location inside of a store.

There are several indoor location systems available and the most reliable systems require some type of hardware to be available onsite. We highly recommend Bluetooth Low Energy (BLE) hardware for its balance of low cost, accuracy, and network security. BLE is available in the form of standalone beacons, inside of WiFi access points and smart lighting, and inside of many sensors and cameras as well.

*Id.* at 18.

132.    The Home Depot Mobile Application provides for obtaining a normalized position information (*e.g.*, precise or accurate location based on GPS, Bluetooth and Wi-Fi signals) based at least in part on the first position information and second position information;



63

*See e.g.,* screenshots from Home Depot Mobile Application indicate that the app requires Wi-Fi and Bluetooth position information to improve location accuracy.



*See e.g.*, https://play.google.com/store/apps/datasafety?id=com.thehomedepot&hl=en_US.



*See e.g.,* https://support.google.com/android/answer/3467281?hl=en#zippy=%2Cwhen-location-accuracy-is-on. When location accuracy is turned on, wireless signals such as GPS, Wi-Fi, and Bluetooth are used to obtain the most accurate location.



*See e.g.,* https://www.youtube.com/watch?v=-5sGrZkkzjE.

133.    The Home Depot Mobile Application provides for determining with a computer processor that the mobile device is transitioning (*e.g.*, outdoor-to-indoor transition) from a first geographic region (*e.g.*, outdoor area) associated with first map data to a second geographic region (*e.g.*, indoor area) associated with second map data (*e.g.*, indoor map associated with the store) based at least on the normalized position information:









*See e.g.,* https://www.youtube.com/watch?v=OP6PWaNAL-c. The Home Depot mobile application automatically detects when a user enters a store and displays the landing page for the new store mode. This occurs when location sharing is enabled and the user is within a store geofence. This indicates a transition from an outdoor area to an indoor area.

**a.  The technology components of Store Mode**

Ex. 1 at 16;

> **Outdoor Geofencing**
>
> An outdoor geofence marks an area around a store and its parking lot. It is used by an app with location permissions to trigger events when a user enters or exits the geofenced area.

*Id.* at 17;

> **Indoor Location System with Indoor Geofencing**
>
> For any use cases that rely on knowing a user's location inside the store, you will need an indoor location system. Where GPS is unreliable inside of buildings, indoor location systems close that gap and make it possible to get a user's location inside of a store.
>
> There are several indoor location systems available and the most reliable systems require some type of hardware to be available onsite. We highly recommend Bluetooth Low Energy (BLE) hardware for its balance of low cost, accuracy, and network security. BLE is available in the form of standalone beacons, inside of WiFi access points and smart lighting, and inside of many sensors and cameras as well.

*Id.* at 18;

> 1.2. **Smooth indoor-outdoor transitions** - Allow seamless outdoor-to-indoor, indoor-to-outdoor positioning subject to local GPS accuracy in outdoor environments

*Id*. at 34.



*See e.g.,* https://www.youtube.com/watch?v=-5sGrZkkzjE.

134.    The Home Depot Mobile Application provides for determining that the mobile device has entered a zone (*e.g.*, in-store) associated with the second geographic region based on the normalized position information and based on information related to a boundary of a Geo-fence (*e.g.*, store geofence) that is associated with the second region:









*See e.g.,* https://www.youtube.com/watch?v=OP6PWaNAL-c. The Home Depot mobile

application automatically detects when a user enters a store and displays the landing page for the

new store mode. This occurs when location sharing is enabled and the user is within a store

geofence.

## a.  The technology components of Store Mode

Ex. 1 at 16;

> **Outdoor Geofencing**
>
> An outdoor geofence marks an area around a store and its parking lot. It is used by an app with location permissions to trigger events when a user enters or exits the geofenced area.

*Id.* at 17;

> 1.2.    **Smooth indoor-outdoor transitions** - Allow seamless outdoor-to-indoor, indoor-to-outdoor positioning subject to local GPS accuracy in outdoor environments

*Id.* at 34.

70



*See e.g.,* Screenshots from the Home Depot Mobile Application. The left screenshot shows that

Store Mode is disabled when the user is not in the vicinity of the store. The middle screenshot

shows the landing page that appears when the mobile app detects that the user is in the vicinity of

the store. The right screenshot shows a welcome message, such as "Welcome to Paterson" or

"Welcome to Your Store". All the screenshots demonstrate that the app detects a transition from

an outdoor area to an indoor area.





*See e.g.,* https://apps.apple.com/us/app/the-home-depot/id342527639. The store mode is enabled when the user is in the vicinity of the store, and the Home Depot mobile application displays a map of the store.



*See e.g.,* https://www.youtube.com/watch?v=-5sGrZkkzjE.

135.    The Home Depot Mobile Application provides for displaying a map of the second geographic region (*e.g.*, an indoor map corresponding to the layout of the store) on a user interface (*e.g.*, display) of the mobile device, based at least in part on the determination that the mobile device is transitioning from the first geographic region to the second geographic region (*e.g.*, The indoor map of the store is available only when the app detects that it is within the immediate vicinity of the store):









*See e.g.,* https://www.youtube.com/watch?v=OP6PWaNAL-c. The Home Depot mobile application automatically detects a transition from an outdoor area to an indoor area and switches to the store mode.

## a.  The technology components of Store Mode

Ex. 1 at 16;

> **Outdoor Geofencing**
>
> An outdoor geofence marks an area around a store and its parking lot. It is used by an app with location permissions to trigger events when a user enters or exits the geofenced area.

*Id.* at 17;

> 1.2.    **Smooth indoor-outdoor transitions** - Allow seamless outdoor-to-indoor, indoor-to-outdoor positioning subject to local GPS accuracy in outdoor environments

*Id.* at 34.



*See e.g.,* Screenshots from the Home Depot Mobile Application. The left screenshot shows that

Store Mode is disabled when the user is not in the vicinity of the store. The middle screenshot

shows the landing page that appears when the mobile app detects that the user is in the vicinity of

the store. The right screenshot shows a welcome message, such as "Welcome to Paterson" or

"Welcome to Your Store". All the screenshots suggest that the app detects a transition from an

outdoor area to an indoor area.





*See e.g.,* https://apps.apple.com/us/app/the-home-depot/id342527639. The store mode is enabled

when the user is within the immediate vicinity of the store, and the Home Depot mobile

application displays a map of the store.



*See e.g.,* https://www.youtube.com/watch?v=-5sGrZkkzjE;



*See e.g.,* screenshot from the Home Depot Mobile Application displaying the in-store map on the display of the mobile phone.

136.    Home Depot directly infringed and continues to infringe at least claim 13 of the '080 patent in violation of 35 U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell Home Depot Products and Services; and making, using, selling, selling access to, importing, offering for sale, and/or offering to sell access to Home Depot System.

137.    At least as early as the service of the instant Complaint, Home Depot will be in violation of 35 U.S.C. § 271(b) and will indirectly infringe at least claim 13 of the '080 patent by knowingly and specifically intending to induce infringement by others (including, without limitation, inducing Home Depot's customers to use the Home Depot Products and Services and Home Depot System) and possessing specific intent to encourage infringement by Home Depot's customers. Home Depot Products and Services and Home Depot System are and were specifically configured to function in accordance with the '080 patent claims, are material parts of the invention, and do not have substantial non-infringing uses.

138.    GoTV Networks has been damaged by the direct and indirect infringement of Home Depot and has suffered and continues to suffer irreparable harm and damages as a result of this infringement.

139.    GoTV has been damaged by Home Depot's infringing conduct in an amount no less than a reasonable royalty.

**Count III – Infringement of United States Patent No. 10,254,378**

140.    GoTV Networks repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

141.    Home Depot has violated and continues to violate 35 U.S. C. §§ 271(a) and (b) with respect to one or more claims of the '378 patent.

142.    Home Depot (or those acting on its behalf), including with respect to Home Depot's internal use for testing and development purposes, (i) made, used, sold, imported and/or offered to sell Home Depot Products and Services; (ii) made, used, sold, sold access to, imported, offered to sell and/or offered to sell access to Home Depot System; and, (iii) induced its customers to use Home Depot Products and Services and Home Depot System, in the United

79

States, and therefore infringes (literally and/or under the doctrine of equivalents) at least claim 1 of the '378 patent.

143.    Claim 1 of the '378 patent provides:

A method for tracking a mobile device in a bounded area, the method comprising:

receiving, at a computer system, a first set of sensor data from one or more sensors of a mobile device;

at the computer system, generating, based on the first set of sensor data, a heuristic map describing a set of possible current locations of the mobile device in a bounded area;

receiving, at the computer system, a second set of sensor data from one or more sensors of the mobile device;

determining, by a computer processor at the computer system, based on the second set of sensor data, a change in position of the mobile device;

at the computer system, updating, based on the change in position, the heuristic map to disqualify a first possible current location from the set of possible current locations; and

outputting the set of current possible locations of the heuristic map for display on a user interface of the mobile device,

wherein the one or more sensors of the mobile device include a radio antenna, and wherein the determining of the change in position is further based on radio signals received at the radio antenna,

further comprising, at the computer system, determining received signal strength indicators of the radio signals, and

wherein the determining of the change in position is further based on a relative comparison of the received signal strength indicators.

144.    The Home Depot Mobile Application employs and provides a method for tracking a mobile device in a bounded area (*e.g.,* indoor or in-store):

**ANNUAL REPORT 2022**

> Throughout fiscal 2022, we continued to reduce friction for our customers and improve the interconnected experience. Sales leveraging our digital platforms increased over 7 percent versus prior year, and we continue to see record downloads, traffic, and sales via our mobile app. This growth is attributable to several enhancements, including an improved online experience for our Pro loyalty program, the seamless connectivity we have provided for our military program, and the launch of our new store mode feature, which makes navigating the store and interacting with products much easier. These enhancements translate to less friction for our customers, as they navigate the digital world and connect to the physical world.

*See e.g.,* https://www.sec.gov/Archives/edgar/data/354950/000035495023000102/ars2022v3.pdf.

Home Depot Mobile Application's new Store Mode feature provides indoor navigation functionality that allows users to navigate the store and find the exact location of a product using directions provided on the store map.



*See e.g.,* https://www.pointr.tech/.

81



*See e.g.,* https://www.youtube.com/watch?v=-5sGrZkkzjE.

The Home Depot Mobile Application determines a user's location inside the store and displays it on the map as, at least, a blue dot. As the user moves around the store, the app tracks the user's movement and updates the location on the map.

145.    The Home Depot Mobile Application provides for receiving, at a computer system, a first set of sensor data (*e.g.*, Bluetooth/BLE sensor data) from one or more sensors of a mobile device:



*See e.g.,* screenshots from the Home Depot Mobile Application indicate that Bluetooth information is essential for determining the user's location inside the store.

a.   The technology components of Store Mode

> **Indoor Location System with Indoor Geofencing**
>
> For any use cases that rely on knowing a user's location inside the store, you will need an indoor location system. Where GPS is unreliable inside of buildings, indoor location systems close that gap and make it possible to get a user's location inside of a store.
>
> There are several indoor location systems available and the most reliable systems require some type of hardware to be available onsite. We highly recommend Bluetooth Low Energy (BLE) hardware for its balance of low cost, accuracy, and network security. BLE is available in the form of standalone beacons, inside of WiFi access points and smart lighting, and inside of many sensors and cameras as well.
>
> In addition to hardware, there is a software component as well that actually calculates the user's locations. This typically is in the form of a Software Development Kit (SDK) that the location vendor provides, which
>
> you can embed into your mobile app. The SDK calculates the user's real time location inside of the store. The SDK should also give you the ability to create indoor geofences around departments, checkouts, dressing rooms, and other points of interest on your digital map.

Ex. 1 at 16, 18, 19.

> **Real-Time Location**
>
> When the app starts, the SDK triggers a permission dialog (on iOS and Android) to request permission from user to track their location (while running the app and/or in background). If a user declines this request, no location tracking is carried out. Users may at any time opt in / out of location tracking for the particular app that includes our SDK.
>
> The SDK detects Bluetooth signals and processes them along with phone inertial motion sensors (such as gyroscope and accelerometer) to calculate indoor position of the device (smartphone).

*See e.g.,* https://www.pointr.tech/technology/gdpr. The SDK embedded in the mobile app detects

Bluetooth/BLE signals and processes them to calculate the mobile device's position.

> 1.7.    **Operate offline; no fingerprinting** - Operate at full capacity without the need for an internet connection to provide offline proximity detection and ensure a consistent user experience regardless of the strength of cellular and Wi-Fi signals and a number of concurrent users. The location should be calculated in real-time on the device using Bluetooth signals and inertial sensors with no dependency on real-time internet connectivity

Ex. 1 at 34.

84

146.    One or more components of the Home Depot Mobile Application provide for generating, based on the first set of sensor data, (*e.g.*, Bluetooth/BLE sensor data) a heuristic map describing a set of possible current locations of the mobile device in a bounded area, at the computer system:

a.  The technology components of Store Mode

**Indoor Location System with Indoor Geofencing**

For any use cases that rely on knowing a user's location inside the store, you will need an indoor location system. Where GPS is unreliable inside of buildings, indoor location systems close that gap and make it possible to get a user's location inside of a store.

There are several indoor location systems available and the most reliable systems require some type of hardware to be available onsite. We highly recommend Bluetooth Low Energy (BLE) hardware for its balance of low cost, accuracy, and network security. BLE is available in the form of standalone beacons, inside of WiFi access points and smart lighting, and inside of many sensors and cameras as well.

In addition to hardware, there is a software component as well that actually calculates the user's locations. This typically is in the form of a Software Development Kit (SDK) that the location vendor provides, which you can embed into your mobile app. The SDK calculates the user's real time location inside of the store. The SDK should also give you the ability to create indoor geofences around departments, checkouts, dressing rooms, and other points of interest on your digital map.

Some indoor location providers also provide dynamic and static wayfinding algorithms which can be used to automatically calculate the fastest path between two locations inside a store.

We highly recommend using the same location provider for indoor location as your digital map. This is a critical integration point for a seamless customer experience, and a poor integration often leads to a poor customer experience.

Finally, the indoor location system should be able to feed location data back into your Customer Data Profile System.

Ex. 1 at 16, 18, 19.



*See e.g.,* https://www.youtube.com/watch?v=-5sGrZkkzjE.

The key requirement for indoor positioning technology is accuracy - the blue-dot needs to provide a user's location within 1 to 3 meters (3 to 9 feet) consistently, floor transitions need to be smooth even in complex buildings and the solution should operate offline with minimal maintenance which means avoiding technologies like fingerprinting.

*See* Ex. 1, at 34.

147.    The Home Depot Mobile Application provides for receiving, at the computer system, a second set of sensor data (*e.g.*, inertial sensor data) from one or more sensors (*e.g.*, inertial sensors such as gyroscope and accelerometer) of the mobile device:

86

> a. The technology components of Store Mode

> **Indoor Location System with Indoor Geofencing**
>
> For any use cases that rely on knowing a user's location inside the store, you will need an indoor location system. Where GPS is unreliable inside of buildings, indoor location systems close that gap and make it possible to get a user's location inside of a store.

> In addition to hardware, there is a software component as well that actually calculates the user's locations. This typically is in the form of a Software Development Kit (SDK) that the location vendor provides, which

> you can embed into your mobile app. The SDK calculates the user's real time location inside of the store. The SDK should also give you the ability to create indoor geofences around departments, checkouts, dressing rooms, and other points of interest on your digital map.

Ex. 1 at 16, 18, 19.

> **Real-Time Location**
>
> When the app starts, the SDK triggers a permission dialog (on iOS and Android) to request permission from user to track their location (while running the app and/or in background). If a user declines this request, no location tracking is carried out. Users may at any time opt in / out of location tracking for the particular app that includes our SDK.
>
> The SDK detects Bluetooth signals and processes them along with phone inertial motion sensors (such as gyroscope and accelerometer) to calculate indoor position of the device (smartphone).

*See e.g.,* https://www.pointr.tech/technology/gdpr. The SDK embedded in the mobile app

collects data from the inertial sensors (such as gyroscope and accelerometer) of the mobile

device.

> 1.7. **Operate offline; no fingerprinting** - Operate at full capacity without the need for an internet connection to provide offline proximity detection and ensure a consistent user experience regardless of the strength of cellular and Wi-Fi signals and a number of concurrent users. The location should be calculated in real-time on the device using Bluetooth signals and inertial sensors with no dependency on real-time internet connectivity

Ex. 1 at 34.

148.    The Home Depot Mobile Application provides for determining, by a computer processor at the computer system, based on the second set of sensor data, (*e.g.*, inertial sensor data) a change in position of the mobile device:

> a.  The technology components of Store Mode

> **Indoor Location System with Indoor Geofencing**
>
> For any use cases that rely on knowing a user's location inside the store, you will need an indoor location system. Where GPS is unreliable inside of buildings, indoor location systems close that gap and make it possible to get a user's location inside of a store.
>
> There are several indoor location systems available and the most reliable systems require some type of hardware to be available onsite. We highly recommend Bluetooth Low Energy (BLE) hardware for its balance of low cost, accuracy, and network security. BLE is available in the form of standalone beacons, inside of WiFi access points and smart lighting, and inside of many sensors and cameras as well.
>
> In addition to hardware, there is a software component as well that actually calculates the user's locations. This typically is in the form of a Software Development Kit (SDK) that the location vendor provides, which
>
> you can embed into your mobile app. The SDK calculates the user's real time location inside of the store. The SDK should also give you the ability to create indoor geofences around departments, checkouts, dressing rooms, and other points of interest on your digital map.

Ex. 1 at 16, 18, 19.

> 1.7.    **Operate offline; no fingerprinting** - Operate at full capacity without the need for an internet connection to provide offline proximity detection and ensure a consistent user experience regardless of the strength of cellular and Wi-Fi signals and a number of concurrent users. The location should be calculated in real-time on the device using Bluetooth signals and inertial sensors with no dependency on real-time internet connectivity

Ex. 1 at 34.

> **Real-Time Location**
>
> When the app starts, the SDK triggers a permission dialog (on iOS and Android) to request permission from user to track their location (while running the app and/or in background). If a user declines this request, no location tracking is carried out. Users may at any time opt in / out of location tracking for the particular app that includes our SDK.
>
> The SDK detects Bluetooth signals and processes them along with phone inertial motion sensors (such as gyroscope and accelerometer) to calculate indoor position of the device (smartphone).

*See e.g.,* https://www.pointr.tech/technology/gdpr.

The SDK embedded in the mobile app detects Bluetooth/BLE signals and processes them along with the data from the mobile device's inertial sensors to calculate the mobile device's position.

> **Best practices for indoor positioning**
>
> The key requirement for indoor positioning technology is accuracy - the blue-dot needs to provide a user's location within 1 to 3 meters (3 to 9 feet) consistently, floor transitions need to be smooth even in complex buildings and the solution should operate offline with minimal maintenance which means avoiding technologies like fingerprinting.

> 1.1.    **1-3 meter positioning accuracy** - The system should automatically detect and continuously update the real-time location of the user with 1-3 meter (3-9 feet) accuracy on the map, step-by-step as the user walks around

Ex. 1 at 34.

The mobile application continuously updates the user's location based on Bluetooth/BLE signals and data from the inertial sensor.

149.    The Home Depot Mobile Application provides for updating, based on the change in position, the heuristic map to disqualify a first possible current location from the set of possible current locations, at the computer system:

### Best practices for indoor positioning

The key requirement for indoor positioning technology is accuracy - the blue-dot needs to provide a user's location within 1 to 3 meters (3 to 9 feet) consistently, floor transitions need to be smooth even in complex buildings and the solution should operate offline with minimal maintenance which means avoiding technologies like fingerprinting.

1.1.    **1-3 meter positioning accuracy** - The system should automatically detect and continuously update the real-time location of the user with 1-3 meter (3-9 feet) accuracy on the map, step-by-step as the user walks around

1.7.    **Operate offline; no fingerprinting** - Operate at full capacity without the need for an internet connection to provide offline proximity detection and ensure a consistent user experience regardless of the strength of cellular and Wi-Fi signals and a number of concurrent users. The location should be calculated in real-time on the device using Bluetooth signals and inertial sensors with no dependency on real-time internet connectivity

Ex. 1 at 34.

The mobile application continuously updates the user's location based on Bluetooth/BLE signals and data from the inertial sensor.





*See e.g.,* https://www.youtube.com/watch?v=-5sGrZkkzjE.

The Home Depot Mobile Application determines a user's location inside the store and displays it on the map as a light blue sphere and/or a blue dot. As the user moves around the store, the app tracks the user's movement and continuously updates the location on the map.

150.    The Home Depot Mobile Application provides for outputting the set of current possible locations (*e.g.,* the set of current possible locations represented by a light blue sphere and/or a blue dot in the screenshots of the Home Depot Mobile Application shown below) of the heuristic map for display on a user interface of the mobile device:

## Best practices for indoor positioning

The key requirement for indoor positioning technology is accuracy - the blue-dot needs to provide a user's location within 1 to 3 meters (3 to 9 feet) consistently, floor transitions need to be smooth even in complex buildings and the solution should operate offline with minimal maintenance which means avoiding technologies like fingerprinting.

1.1.    **1-3 meter positioning accuracy** - The system should automatically detect and continuously update the real-time location of the user with 1-3 meter (3-9 feet) accuracy on the map, step-by-step as the user walks around

1.7.    **Operate offline; no fingerprinting** - Operate at full capacity without the need for an internet connection to provide offline proximity detection and ensure a consistent user experience regardless of the strength of cellular and Wi-Fi signals and a number of concurrent users. The location should be calculated in real-time on the device using Bluetooth signals and inertial sensors with no dependency on real-time internet connectivity

Ex. 1 at 34.

The mobile application continuously updates the user's location based on Bluetooth/BLE signals and data from the inertial sensor.



*See e.g.,* https://www.youtube.com/watch?v=-5sGrZkkzjE.

The Home Depot Mobile Application determines a user's location inside the store and displays it on the map as a light blue sphere and/or a blue dot. As the user moves around the store, the app tracks the user's movement and continuously updates the location on the map.

151.    The Home Depot Mobile Application provides for outputting the set of current possible locations of the heuristic map for display on a user interface of the mobile device wherein the one or more sensors of the mobile device include a radio antenna, (*e.g.*, a Bluetooth

antenna) and wherein the determining of the change in position is further based on radio signals (*e.g.*, Bluetooth/BLE radio signals) received at the radio antenna:



*See e.g.,* screenshots from the Home Depot Mobile application indicate that Bluetooth information is essential for determining the user's location inside the store.

**Indoor Location System with Indoor Geofencing**

For any use cases that rely on knowing a user's location inside the store, you will need an indoor location system. Where GPS is unreliable inside of buildings, indoor location systems close that gap and make it possible to get a user's location inside of a store.

There are several indoor location systems available and the most reliable systems require some type of hardware to be available onsite. We highly recommend Bluetooth Low Energy (BLE) hardware for its balance of low cost, accuracy, and network security. BLE is available in the form of standalone beacons, inside of WiFi access points and smart lighting, and inside of many sensors and cameras as well.

In addition to hardware, there is a software component as well that actually calculates the user's locations. This typically is in the form of a Software Development Kit (SDK) that the location vendor provides, which you can embed into your mobile app. The SDK calculates the user's real time location inside of the store. The SDK should also give you the ability to create indoor geofences around departments, checkouts, dressing rooms, and other points of interest on your digital map.

Ex. 1 at 18, 19.

94

**Real-Time Location**

When the app starts, the SDK triggers a permission dialog (on iOS and Android) to request permission from user to track their location (while running the app and/or in background). If a user declines this request, no location tracking is carried out. Users may at any time opt in / out of location tracking for the particular app that includes our SDK.

The SDK detects Bluetooth signals and processes them along with phone inertial motion sensors (such as gyroscope and accelerometer) to calculate indoor position of the device (smartphone).

*See e.g.,* https://www.pointr.tech/technology/gdpr.

# What is a Bluetooth/ BLE beacon?

A Bluetooth beacon is a small device (approx. 3cm x 5cm x 2cm) that constantly sends out radio signals to nearby smartphones and tablets, containing a small amount of data. The signal strength and time between each signal can be configured to achieve a desired area of coverage. Mobile apps can listen for the signals being broadcast and, when they hear a relevant signal, can trigger an action on your phone.

*See e.g.,* https://www.pointr.tech/blog/beacons-everything-you-need-to-know.

152.    The Home Depot Mobile Application provides for determining received signal strength indicators of the radio signals (*e.g.,* signal strength of Bluetooth signals) at the computer system:

**Indoor Location System with Indoor Geofencing**

For any use cases that rely on knowing a user's location inside the store, you will need an indoor location system. Where GPS is unreliable inside of buildings, indoor location systems close that gap and make it possible to get a user's location inside of a store.

There are several indoor location systems available and the most reliable systems require some type of hardware to be available onsite. We highly recommend Bluetooth Low Energy (BLE) hardware for its balance of low cost, accuracy, and network security. BLE is available in the form of standalone beacons, inside of WiFi access points and smart lighting, and inside of many sensors and cameras as well.

In addition to hardware, there is a software component as well that actually calculates the user's locations. This typically is in the form of a Software Development Kit (SDK) that the location vendor provides, which

you can embed into your mobile app. The SDK calculates the user's real time location inside of the store. The SDK should also give you the ability to create indoor geofences around departments, checkouts, dressing rooms, and other points of interest on your digital map.

Ex. 1 at 18, 19.

> # What is a Bluetooth/ BLE beacon?
>
> A Bluetooth beacon is a small device (approx. 3cm x 5cm x 2cm) that constantly sends out radio signals to nearby smartphones and tablets, containing a small amount of data. The signal strength and time between each signal can be configured to achieve a desired area of coverage. Mobile apps can listen for the signals being broadcast and, when they hear a relevant signal, can trigger an action on your phone.

*See e.g.,* https://www.pointr.tech/blog/beacons-everything-you-need-to-know.

> In addition to the potential range of Bluetooth Low Energy, most protocols also operate with three ranges of distance: far, near and immediate – and a device can do something different at each range.
>
> - Far – this is designed so that your device can do something when you can just about hear a beacon (i.e. walking past a store)
>
> - Near – this is designed so your device can do something once you are in the same room as a beacon (i.e. walking into a store)
>
> - Immediate – this is designed so your device can do something once you are virtually touching a beacon (i.e. touching an advert or checkout in a shop)
>
> The signals also allows apps to recognize whether you are getting closer or further away, hence offer you a welcome/goodbye message as you shop, or even understand which parts of the shop you interacted with. Remember that this processing would have to be done by the app as a beacon only transmits data and cannot receive a signal from your phone – this information could however be transmitted back to the shop via a data/Wi-Fi connection.

*Id.*

153.    The Home Depot Mobile Application provides for determining of the change in position is further based on a relative comparison of the received signal strength indicators (*e.g.*, relative signal strength of the BLE beacons):

96

> # What is a Bluetooth/ BLE beacon?
>
> A Bluetooth beacon is a small device (approx. 3cm x 5cm x 2cm) that constantly sends out radio signals to nearby smartphones and tablets, containing a small amount of data. The signal strength and time between each signal can be configured to achieve a desired area of coverage. Mobile apps can listen for the signals being broadcast and, when they hear a relevant signal, can trigger an action on your phone.

*See e.g.,* https://www.pointr.tech/blog/beacons-everything-you-need-to-know.

> This brings us to how beacon tracking actually works. In spite of the phrase, any tracking functionality is actually performed by an app, which, when granted user's location, can use the signals emitted by the beacons collectively to effectively triangulate a user's position based on the relative signal strengths of the beacons that the app can 'hear'.

*Id.*

The mobile application uses the Bluetooth signals to triangulate a user's position based on relative signal strengths of the Bluetooth signals.

> In addition to the potential range of Bluetooth Low Energy, most protocols also operate with three ranges of distance: far, near and immediate – and a device can do something different at each range.
>
> - Far – this is designed so that your device can do something when you can just about hear a beacon (i.e. walking past a store)
>
> - Near – this is designed so your device can do something once you are in the same room as a beacon (i.e. walking into a store)
>
> - Immediate – this is designed so your device can do something once you are virtually touching a beacon (i.e. touching an advert or checkout in a shop)
>
> The signals also allows apps to recognize whether you are getting closer or further away, hence offer you a welcome/goodbye message as you shop, or even understand which parts of the shop you interacted with. Remember that this processing would have to be done by the app as a beacon only transmits data and cannot receive a signal from your phone – this information could however be transmitted back to the shop via a data/Wi-Fi connection.

*Id.*

154.    Home Depot directly infringed and continues to infringe at least claim 1 of the '378 patent in violation of 35 U.S.C. § 271(a) by making, using, selling, importing, and/or

offering to sell Home Depot Products and Services; and making, using, selling, selling access to, importing, offering for sale, and/or offering to sell access to Home Depot System.

155. At least as early as the service of the instant Complaint, Home Depot will be in violation of 35 U.S.C. § 271(b) and will indirectly infringe at least claim 1 of the '378 patent by knowingly and specifically intending to induce infringement by others (including, without limitation, Home Depot's customers) and possessing specific intent to encourage infringement by Home Depot's customers. Home Depot Products and Services and Home Depot System are and were specifically configured to function in accordance with the '378 patent claims, are material parts of the invention, and do not have substantial non-infringing uses.

156. GoTV Networks has been damaged by the direct and indirect infringement of Home Depot and has suffered and continues to suffer irreparable harm and damages as a result of this infringement.

157. GoTV has been damaged by Home Depot's infringing conduct in an amount no less than a reasonable royalty.

**Count IV – Infringement of United States Patent No. 11,317,238**

158. GoTV Networks repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

159. Home Depot has violated and continues to violate 35 U.S. C. §§ 271(a) and (b) with respect to one or more claims of the '238 patent.

160. Home Depot (or those acting on its behalf) (i) made, used, sold, imported and/or offered to sell Home Depot Products and Services; (ii) made, used, sold, sold access to, imported, offered to sell and/or offered to sell access to Home Depot System; and, (iii) induced its customers to use Home Depot Products and Services and Home Depot System, in the United

States, and therefore infringes (literally and/or under the doctrine of equivalents) at least claim 1 of the '238 patent.

161.    Claim 1 of the '238 patent provides:

A non-transitory computer readable medium storing code segments causing a computer processor to execute a process for allocating monitoring resources of a mobile device based on information received at the mobile device, the process comprising:

(a) receiving, over a network, a plurality of outdoor regions and a plurality of indoor regions associated with a geographic area at the mobile device, wherein each of the plurality of outdoor regions includes at least one of the plurality of indoor regions;

(b) determining, using a computer processor, whether the mobile device is outside of each of the plurality of outdoor regions;

(c) allocating the monitoring resources of the mobile device in a first mode to an outdoor location resource and to exclusion of an indoor location resource when it is determined that the mobile device is outside each of the plurality of outdoor regions, wherein the first mode of allocating the monitoring resources of the mobile device comprises monitoring a geographic location of the mobile device with respect to at least a subset of the plurality of outdoor regions; and

(d) allocating the monitoring resources of the mobile device in a second mode to include the indoor location resource when it is determined that the mobile device is within a given outdoor region among the plurality of outdoor regions and to exclusion of other outdoor regions of the plurality of regions, wherein the second mode of allocating the monitoring resources of the mobile device comprises monitoring a geographic location of the mobile device in the given outdoor region with respect to the at least one indoor region.

162.    The Home Depot Mobile Application comprises a non-transitory computer readable medium storing code segments causing a computer processor (*e.g.*, a processor in a mobile device on which the Home Depot Mobile Application has been installed) to execute a process for allocating monitoring resources (*e.g.*, either GPS or Bluetooth based monitoring) of a

mobile device based on information received at the mobile device (*e.g.*, information related to the current location of the mobile device) through the Home Depot Mobile Application.





*See e.g.,* https://www.youtube.com/watch?v=OP6PWaNAL-c.



*See e.g.,* screenshots from Home Depot Mobile Application indicate that the application uses the

GPS location information to search for nearby stores.



*See e.g.,* screenshots from Home Depot Mobile Application indicate that the app requires Wi-Fi and Bluetooth position information to improve location accuracy if the user is inside the Home Depot retail store.

> **a.   The technology components of Store Mode**

Ex. 1 at 16;

> **Outdoor Geofencing**
>
> An outdoor geofence marks an area around a store and its parking lot. It is used by an app with location permissions to trigger events when a user enters or exits the geofenced area.

*Id.* at 17;

> **Indoor Location System with Indoor Geofencing**
>
> For any use cases that rely on knowing a user's location inside the store, you will need an indoor location system. Where GPS is unreliable inside of buildings, indoor location systems close that gap and make it possible to get a user's location inside of a store.
>
> There are several indoor location systems available and the most reliable systems require some type of hardware to be available onsite. We highly recommend Bluetooth Low Energy (BLE) hardware for its balance of low cost, accuracy, and network security. BLE is available in the form of standalone beacons, inside of WiFi access points and smart lighting, and inside of many sensors and cameras as well.

*Id.* at 18.

> **Real-Time Location**
>
> When the app starts, the SDK triggers a permission dialog (on iOS and Android) to request permission from user to track their location (while running the app and/or in background). If a user declines this request, no location tracking is carried out. Users may at any time opt in / out of location tracking for the particular app that includes our SDK.
>
> The SDK detects Bluetooth signals and processes them along with phone inertial motion sensors (such as gyroscope and accelerometer) to calculate indoor position of the device (smartphone).
>
> Similarly, the SDK detects GPS signals to calculate the outdoor position of device (smartphone). The SDK uploads this location information to Pointr Cloud, along with Device Identifier.

*See e.g.,* https://www.pointr.tech/technology/gdpr. Bluetooth signals, along with inertial sensor data, are used for indoor positioning, and GPS signals are used to calculate the outdoor position. Thus, monitoring resources are allocated based on the current position information of the mobile device on which the Home Depot application is installed. If the mobile device is in an outdoor

area (outside the Home Depot retail locations), GPS-based monitoring is selected (to search for nearby stores), and if the mobile device is in an indoor area, Bluetooth and inertial sensor-based monitoring is selected.

163.    The Home Depot Mobile Application provides for receiving, over a network, a plurality of outdoor regions (*e.g.*, a plurality of outdoor regions related to Home Depot's retail locations, including for example the regions surrounding a Home Depot retail location, its parking lots, its outdoor garden center, etc.) and a plurality of indoor regions (*e.g.*, a plurality of indoor regions related to Home Depot's retail locations, including for example the regions associated with indoor departments, checkouts, etc.) associated with a geographic area, at the mobile device, wherein each of the plurality of outdoor regions includes at least one of the plurality of indoor regions:



*See e.g.,* screenshots from Home Depot Mobile Application indicate that the app receives information related to Home Depot stores ("a plurality of outdoor regions") located near the

current geographic area ("a geographic area") of the mobile device on which the Home Depot

app is installed.

> At the store, The Home Depot's mobile app makes a subtle and automatic switch to in-store mode, which helps customers quickly find the right item and its exact aisle and bay among the 35,000 items in the typical Home Depot store. Because no two stores are laid out exactly the same, the mobile app has access to every store's layout and can tell which store a customer is in. Customers and store associates can also see a store's exact stock numbers for any item.

*See e.g.,* https://corporate.homedepot.com/news/company/hammers-nails-and-code-

interconnected-shopping-experience.

164.    The Home Depot Mobile application has access to the indoor map (store layout)

of each store, and can detect which store the customer is located in.

Here is a list of Store Mode use cases and the IT components retailers need to implement each use case. We will explain each in detail below.

| | | Use Cases | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Activate Store Mode | Lookup products inside the store | Provide an in-store map | Find products on a map | Navigate to products in the store | Let customers ask for help from where they are | Send contextual, personalized offers in store | Gather shopper location intelligence |
| Components needed | Mobile app | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| | Outdoor Geofencing | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| | Digital Store Maps | | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| | Digital Product Catalog with Location Data | | | | ✓ | ✓ | | | |
| | Indoor Location System with geofencing | | | | | ✓ | ✓ | ✓ | ✓ |

Ex. 1 at 15; Outdoor geofencing is required to activate the store mode when the customer is in

the vicinity of the store.

## a.  The technology components of Store Mode

*Id.* at 16;

> **Outdoor Geofencing**
>
> An outdoor geofence marks an area around a store and its parking lot. It is used by an app with location permissions to trigger events when a user enters or exits the geofenced area.

*Id*. at 17;

> **Indoor Location System with Indoor Geofencing**
>
> For any use cases that rely on knowing a user's location inside the store, you will need an indoor location system. Where GPS is unreliable inside of buildings, indoor location systems close that gap and make it possible to get a user's location inside of a store.
>
> There are several indoor location systems available and the most reliable systems require some type of hardware to be available onsite. We highly recommend Bluetooth Low Energy (BLE) hardware for its balance of low cost, accuracy, and network security. BLE is available in the form of standalone beacons, inside of WiFi access points and smart lighting, and inside of many sensors and cameras as well.

*Id*. at 18.

> ## b. How to Implement Store Mode Use Cases
>
> Once you have your components setup, you are ready to tie them together to bring Store Mode to life.
>
> We'll divide Store Mode Use Cases into 3 categories:
>
> - Minimal
> - Basic
> - Advanced
>
> ### Minimal Implementation
>
> In the Minimal category, we have the use cases:
>
> - Activate Store Mode
> - Lookup products inside the store
> - Provide an in-store map
>
> These use cases only require that you have a mobile app, outdoor geofencing, and digital store maps.
>
> You first need to setup outdoor geofences around each of your stores and parking lots. Some platforms make this easy and others it can be quite manual. For many of the digital mapping and location services providers, this should be a standard part of their basic services.

> Once you have the geofences setup, update your app to ask for location permissions.
>
> Once a user grants location permissions, the app can check if the user is inside of the geofence. If they are, then you can enable Store Mode!
>
> A very basic implementation of Store Mode is to have a "Welcome to the [Location] Store" as a banner on the app and a link to view the store map. If you have specific offers active for that store, those should also appear.

*Id*. at 22 and 23.

165.    An outdoor geofence defines an area surrounding the store and its parking lot. The mobile application determines whether the customer is within the geofenced area, and upon such determination, Store Mode is enabled and a message such as "Welcome to the [Location] Store" is displayed.

166.    Each outdoor region (GPS and/or geofenced outdoor location of the store) is associated with a corresponding indoor region (indoor layout of the store).



*See e.g.,* screenshot from Home Depot Mobile Application showing the Store Mode feature prompting the customer to open the app the next time they are at the store (or in the vicinity of the store) to try Store Mode.



*See e.g.,* https://apps.apple.com/us/app/the-home-depot/id342527639. The Store Mode is enabled when the user is in the vicinity of the store, and the app displays the message "Welcome to Your Store."

167.    The Home Depot Mobile Application provides for determining, using a computer processor, whether the mobile device is outside of each of the plurality of outdoor regions. This is evidenced, for example, by the fact that the Home Depot Mobile Application determines, using the mobile device's processor that its Store Mode function is unavailable when the mobile device is outside the geographic boundary of the plurality of outdoor regions corresponding to its retail stores.



*See e.g.,* Screenshot of the Home Depot Mobile Application demonstrating a determination that "Store Mode" is unavailable.



Ex. 1 at 9;

**a.   The technology components of Store Mode**

*Id.* at 16;

108

> **Outdoor Geofencing**
>
> An outdoor geofence marks an area around a store and its parking lot. It is used by an app with location permissions to trigger events when a user enters or exits the geofenced area.

*Id.* at 17;

> **Indoor Location System with Indoor Geofencing**
>
> For any use cases that rely on knowing a user's location inside the store, you will need an indoor location system. Where GPS is unreliable inside of buildings, indoor location systems close that gap and make it possible to get a user's location inside of a store.
>
> There are several indoor location systems available and the most reliable systems require some type of hardware to be available onsite. We highly recommend Bluetooth Low Energy (BLE) hardware for its balance of low cost, accuracy, and network security. BLE is available in the form of standalone beacons, inside of WiFi access points and smart lighting, and inside of many sensors and cameras as well.

*Id.* at 18.

168.    The Home Depot Mobile Application provides for allocating the monitoring resources of the mobile device in a first mode (*e.g.*, a mode corresponding to the operation of the Home Depot Mobile Application when its "Store Mode" feature is unavailable) to an outdoor location resource (*e.g.*, a GPS monitoring resource) and to exclusion of an indoor location resource (*e.g.*, Bluetooth, or inertial sensor monitoring resource) when it is determined that the mobile device is outside each of the plurality of outdoor regions, (*e.g.*, when the mobile device is outside of the region surrounding a Home Depot retail location), wherein the first mode of allocating the monitoring resources of the mobile device comprises monitoring a geographic location of the mobile device with respect to at least a subset of the plurality of outdoor regions.



*See e.g.,* Screenshot of the Home Depot Mobile Application demonstrating a determination that "Store Mode" is unavailable, indicating that the mobile device on which the application is installed is outside of, or not in proximity to, a Home Depot retail store location.



*See e.g.,* screenshots from Home Depot Mobile Application indicate that the application uses the GPS location information to search for nearby Home Depot stores.



*See e.g.,* screenshots from Home Depot Mobile Application indicate that when the mobile device on which the application is installed is outside of, or not in proximity to, a Home Depot retail store location, GPS-based monitoring is utilized to identify Home Depot stores located near the mobile device's current geographic location.

169.    The Home Depot Mobile Application provides for allocating the monitoring resources of the mobile device in a second mode (*e.g.*, a mode corresponding to the operation of the Home Depot Mobile Application when its "Store Mode" feature is operational) to include the indoor location resource (*e.g.*, Bluetooth, or inertial sensor monitoring resource) when it is determined that the mobile device is within a given outdoor region (*e.g.*, when the mobile device is inside of the region surrounding a Home Depot retail location) among the plurality of outdoor regions (*e.g.*, a plurality of regions surrounding multiple Home Depot retail locations) and to

exclusion of other outdoor regions of the plurality of regions, wherein the second mode of allocating the monitoring resources of the mobile device comprises monitoring a geographic location of the mobile device in the given outdoor region with respect to the at least one indoor region, (*e.g.*, a department within a Home Depot retail location).



*See e.g.,* screenshots from Home Depot Mobile Application indicate the Store Mode is activated and the message "Welcome to [Location] Store" is displayed. Bluetooth and inertial sensor based monitoring is used when Store Mode is activated.









*See e.g.,* https://www.youtube.com/watch?v=OP6PWaNAL-c. The Home Depot mobile

application automatically detects when a customer is in vicinity of Home Depot store. This

occurs when location sharing is enabled and the customer is within the outdoor geofence of the

Home Depot retail location.

Here is a list of Store Mode use cases and the IT components retailers need to implement each use case. We will explain each in detail below.

|  |  | Use Cases | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
|  |  | Activate Store Mode | Lookup products inside the store | Provide an in-store map | Find products on a map | Navigate to products in the store | Let customers ask for help from where they are | Send contextual, personalized offers in store | Gather shopper location intelligence |
| Components needed | Mobile app | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
|  | Outdoor Geofencing | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
|  | Digital Store Maps |  |  | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
|  | Digital Product Catalog with Location Data |  |  |  | ✓ | ✓ |  |  |  |
|  | Indoor Location System with geofencing |  |  |  |  | ✓ | ✓ | ✓ | ✓ |

Ex. 1 at 15; Outdoor geofencing is required to activate the store mode when the customer is in

the vicinity of the store.

## a. The technology components of Store Mode

114

*Id*. at 16;

> **Outdoor Geofencing**
>
> An outdoor geofence marks an area around a store and its parking lot. It is used by an app with location permissions to trigger events when a user enters or exits the geofenced area.

*Id*. at 17;

> **Indoor Location System with Indoor Geofencing**
>
> For any use cases that rely on knowing a user's location inside the store, you will need an indoor location system. Where GPS is unreliable inside of buildings, indoor location systems close that gap and make it possible to get a user's location inside of a store.
>
> There are several indoor location systems available and the most reliable systems require some type of hardware to be available onsite. We highly recommend Bluetooth Low Energy (BLE) hardware for its balance of low cost, accuracy, and network security. BLE is available in the form of standalone beacons, inside of WiFi access points and smart lighting, and inside of many sensors and cameras as well.

*Id*. at 18.

> ## b.  How to Implement Store Mode Use Cases
>
> Once you have your components setup, you are ready to tie them together to bring Store Mode to life.
>
> We'll divide Store Mode Use Cases into 3 categories:
>
> - Minimal
> - Basic
> - Advanced
>
> ### Minimal Implementation
>
> In the Minimal category, we have the use cases:
>
> - Activate Store Mode
> - Lookup products inside the store
> - Provide an in-store map
>
> These use cases only require that you have a mobile app, outdoor geofencing, and digital store maps.
>
> You first need to setup outdoor geofences around each of your stores and parking lots. Some platforms make this easy and others it can be quite manual. For many of the digital mapping and location services providers, this should be a standard part of their basic services.

> Once you have the geofences setup, update your app to ask for location permissions.
>
> Once a user grants location permissions, the app can check if the user is inside of the geofence. If they are, then you can enable Store Mode!
>
> A very basic implementation of Store Mode is to have a "Welcome to the [Location] Store" as a banner on the app and a link to view the store map. If you have specific offers active for that store, those should also appear.

*Id*. at 22 and 23.

170.    An outdoor geofence defines an area surrounding the store and its parking lot. The mobile application determines whether the customer is within the geofenced area, and upon such determination, Store Mode is enabled and a message such as "Welcome to the [Location] Store" is displayed.

171.    Each outdoor region (GPS and/or geofenced outdoor location of the store) is associated with a corresponding indoor region (indoor layout of the store).

> **Real-Time Location**
>
> When the app starts, the SDK triggers a permission dialog (on iOS and Android) to request permission from user to track their location (while running the app and/or in background). If a user declines this request, no location tracking is carried out. Users may at any time opt in / out of location tracking for the particular app that includes our SDK.
>
> The SDK detects Bluetooth signals and processes them along with phone inertial motion sensors (such as gyroscope and accelerometer) to calculate indoor position of the device (smartphone).
>
> Similarly, the SDK detects GPS signals to calculate the outdoor position of device (smartphone). The SDK uploads this location information to Pointr Cloud, along with Device Identifier.

*See e.g.,* https://www.pointr.tech/technology/gdpr. Bluetooth signals, along with inertial sensor data, are used for indoor positioning, and GPS signals are used to calculate the outdoor position. Thus, monitoring resources are allocated based on the current position information of the mobile device on which the Home Depot application is installed. If the mobile device is outside the Home Depot retail store location, GPS-based monitoring is selected (to search for nearby stores), and if the mobile device is in the region surrounding a Home Depot retail store location (outdoor geofence), Bluetooth and inertial sensor-based monitoring is selected.

172.    Home Depot directly infringed and continues to infringe at least claim 1 of the '238 patent in violation of 35 U.S.C. § 271(a) by making, using, selling, importing, and/or offering to sell Home Depot Products and Services; and making, using, selling, selling access to, importing, offering for sale, and/or offering to sell access to Home Depot System.

173.    At least since its receipt of the instant Complaint, Home Depot will know that its continued offering and support of the Home Depot Products and Services will induce its customers to directly infringe the '238 Patent and that Home Depot's encouraging acts will result in direct infringement by its customers.

174.    Home Depot instructed and continues to instruct customers to use Home Depot Products and Services and Home Depot System, without limitation, through Home Depot's website and the Home Depot Mobile Application, which provide access to, and support for using Home Depot Products and Services and Home Depot System.

175.    Home Depot's customers directly infringed at least claim 1 of the '238 patent through their use of the Home Depot Mobile Application.

176.    At least since the service of the instant Complaint, Home Depot will be in violation of 35 U.S.C. § 271(b) and will indirectly infringe at least claim 1 of the '238 patent by knowingly and specifically having intended to induce infringement by others (including, without limitation, Home Depot's customers) and possessing specific intent to encourage infringement by Home Depot's customers. Home Depot Products and Services and Home Depot System are and were specifically configured to function in accordance with the '238 patent claims, are material parts of the invention, and do not have substantial non-infringing uses.

117

177.    GoTV Networks has been damaged by the direct and/or indirect infringement of Home Depot and suffered and continues to suffer irreparable harm and damages as a result of this infringement.

178.    GoTV has been damaged by Home Depot's infringing conduct in an amount no less than a reasonable royalty.

### JURY DEMANDED

179.    Pursuant to Federal Rule of Civil Procedure 38(b), GoTV Networks hereby requests a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE GoTV Networks respectfully requests this Court to enter judgment in its favor and against Defendant Home Depot as follows:

   a.   finding that Home Depot has infringed one or more claims of the '619 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents;

   b.   finding that Home Depot has infringed one or more claims of the '080 patent under 35 U.S.C. §§ 271(a) and (b), either literally or under the doctrine of equivalents;

   c.   finding that Home Depot has infringed one or more claims of the '378 patent under 35 U.S.C. §§ 271(a) and (b), either literally or under the doctrine of equivalents;

   d.   finding that Home Depot has infringed one or more claims of the '238 patent under 35 U.S.C. §§ 271(a) and (b), either literally or under the doctrine of equivalents;

   e.   awarding GoTV Networks damages under 35 U.S.C. § 284, or otherwise permitted by law, including supplemental damages for any continued post-verdict infringement;

   f.   permanently enjoining Home Depot and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith

from infringement of the Patents-in-Suit; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Patents-in-Suit by such entities;

g.   awarding cost of this action (including all disbursements) and attorney fees pursuant to 35 U.S.C. § 285, or as otherwise permitted by the law;

h.   awarding GoTV Networks pre-judgment and post-judgment interest on the damages award and costs; and

i.   awarding such other costs and further relief that the Court determines to be just and equitable.

Dated: March 17, 2026

Respectfully submitted,

By: */s/ Oded Burger*

Oded Burger* (Admitted NY Bar No. 4910808)
Erin Hadi* (DC Bar No. 90031321) (*pro hac vice to be filed*)
oburger@daignaultiyer.com
ehadi@daignaultiyer.com
**DAIGNAULT IYER LLP**
8229 Boone Boulevard, Suite 450
Vienna, VA 22182
* Not Admitted to practice in Virginia

*Attorneys for Plaintiff GoTV Networks* LLC